# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **SCOTT PHILLIP LEWIS,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **Case No. 1:21-cv-00074-LY-SH** |
| | § | |
| **WILLIAMSON COUNTY, TEXAS,** | § | |
| *Defendant* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

### TO: THE HONORABLE LEE YEAKEL
### UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion to Dismiss, filed March 2, 2021 (Dkt. 7), and the associated response and reply briefs. On June 1, 2021, the District Court referred all pending and future motions to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 16.

## I.     Background

Plaintiff Scott Phillip Lewis was pulled over in his vehicle and arrested by the Williamson County, Texas Sheriff's Department on January 25, 2019. Dkt. 1 ¶¶ 6-7. Lewis alleges that the was "detained for a prolonged period of time to ensure camera crews of the television show, 'Live PD,' could arrive on the scene to record and broadcast" and "transported to a different location . . . to ensure a more suitable filming environment for the television show." *Id.* ¶ 7. In 2018, Williamson County Sheriff Robert Chody entered into a contract allowing filming of law enforcement activities for the show; the contract was approved by the Williamson County Commissioner's Court. *Id.* ¶ 8. During the investigation, Lewis performed a sobriety test and "perceived  the officers and film crew to be attempting to escalate the matter or provoke him." *Id.*

1

¶ 26. Lewis alleges that the arresting officer repeatedly pointed out that Lewis had urinated on himself. *Id.* ¶ 11. Lewis was taken to the Williamson County Jail. *Id.* ¶ 9. When he was detained, Lewis alleges, he disclosed to multiple officers that he suffered from mental health issues, including anxiety. *Id.* ¶¶ 11, 27. Lewis alleges that he experienced a panic attack in his jail cell after learning that Live PD would broadcast his arrest on national television. *Id*. After Lewis banged on the walls of the cell, he alleges, a group of officers gathered outside and one officer entered the cell and pinned him, breaking his shoulder. *Id.* Lewis alleges that he made two formal requests to the County seeking an inquiry into the events that resulted in his injuries, but no investigation occurred. *Id.* ¶¶ 16, 28.

On January 25, 2021, Lewis filed suit under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act ("ADA"). Lewis alleges that officers of the Sheriff's Department used excessive force against him, in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Lewis also alleges that the County violated Title II of the ADA by intentionally failing to provide him with reasonable accommodations, which denied him the benefits of Williamson County's programs and services. The County seeks dismissal of Lewis's lawsuit for failure to state a claim under Rule 12(b)(6).

## II.    Legal Standard

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### III.    Analysis

Lewis alleges that Chody, as a policymaker, established a custom of encouraging officers to engage in excessive force to "create 'good TV.'" Dkt. 1 ¶¶ 18, 23. Lewis alleges that this custom culminated in the violation of his constitutional right to bodily integrity, rendering the County liable for Chody's actions under Section 1983. *Id.* ¶ 36. Lewis further alleges that Chody failed to properly train and supervise Williamson County officers regarding their interactions with those suffering from mental illness, which resulted in his injury while in custody and violated the ADA's accommodation requirements. *Id.* ¶ 27.

Williamson County argues that Lewis has not plausibly alleged a constitutional violation, but even if he has, Lewis has not sufficiently pled that any County policy or failure in training or supervision caused the violation. Dkt. 7 at 8-9. Williamson County also asserts that Lewis's ADA claim fails because he does not allege that he is a qualified individual with a disability or that he sought and was intentionally denied a reasonable accommodation. *Id.* at 11-15.

The Court addresses in turn Lewis's claims under Section 1983 and the ADA, then considers his request for leave to amend.

## A. Section 1983

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

To state a claim under Section 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). Claims under Section 1983 may be brought against persons in their individual or official capacity, or against a governmental entity. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009). It is well established that a municipality or a local governmental unit is not liable under Section 1983 on the theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it 'through some official action or imprimatur.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

Before considering whether the County can be held liable for the officer's actions, the Court first must determine whether Lewis has alleged a constitutional violation.

### 1. Constitutional Violation

Williamson County argues that Lewis's Section 1983 claim fails because he has alleged no facts showing that he was deprived of his Fourth or Fourteenth Amendment rights. Dkt. 7 at 5-8.

Lewis alleges that an officer broke his shoulder while he was in the Williamson County jail, which he claims constitutes a Fourteenth Amendment violation.[1]

Pretrial detainees have a constitutional right under the Fourteenth Amendment's Due Process Clause to be free from the use of excessive force. *Kingsley v. Hendrickson*, 576 U.S. 389, 401-02 (2015). To prove an excessive force claim, "a pretrial detainee must show only that the force purposefully and knowingly used against him was objectively unreasonable." *Id.* at 396-97. "[O]bjective reasonableness turns on the 'facts and circumstances in each particular case.'" *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). A court must assess the reasonableness of the force used "from the perspective and with the knowledge of the defendant officer" and with "deference to policies and practices needed to maintain order and institutional security." *Id.* at 399-400. In determining the objective reasonableness of an officer's use of force, a court should consider the following factors: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Id.* at 397.

Lewis has alleged sufficient facts to state a plausible excessive force claim. Lewis alleges that an officer used unreasonable force after he began banging on his cell walls, pinning him in a manner that resulted in a broken shoulder. "[C]ourts have frequently found constitutional

---

[1] Although Lewis labeled his Section 1983 claim as arising under the Fourth Amendment in his Complaint, he clarifies in his Response that he relies on the Fourteenth Amendment. Dkt. 8 at 9. The Court construes his claim under the Fourteenth Amendment. *See Esquivel v. Eastburn*, No. SA-20-CV-00377-OLG, 2021 WL 1667132, at *6 (W.D. Tex. Apr. 28, 2021) (construing pretrial detainee's Eighth Amendment claims under Fourteenth Amendment); *Vaughn v. Anaya*, No. EP-19-CV-00340-KC-ATB, 2020 WL 7385841, at *6 (W.D. Tex. Dec. 16, 2020) (construing pretrial detainee's excessive force claims under Fourteenth Amendment).

violations in cases where a restrained or subdued person is subjected to use of force." *Kitchen v. Dallas Cnty.*, 759 F.3d 468, 479 (5th Cir. 2014), *abrogated in part by Kingsley*, 576 U.S. at 396-97. Accordingly, Lewis has pled a constitutional violation sufficient to support his Section 1983 claim at this stage of the case.[2]

### 2.  Municipal Liability

To establish municipal liability under Section 1983, a plaintiff must plead facts that plausibly establish (1) an official policy (2) promulgated by the municipal policymaker (3) that was the "moving force" behind the violation of the constitutional right. *Piotrowski*, 237 F.3d at 578.

#### a.  Policymaker

The Supreme Court has stated that "whether an official had final policymaking authority is a question of state law." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Under Texas law, the county sheriff is the county's final policymaker in the area of law enforcement. *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996). The county sheriff also is the "keeper of the county jail" and responsible for "supervision and control over the jail." TEX. LOC. GOV'T CODE ANN. § 351.041 (West 2021); *Posey v. Sw. Bell Tel. L.P.*, 430 F. Supp. 2d 616, 626-27 (N.D. Tex. 2006).

Lewis alleges that Chody served as Williamson County Sheriff at the time of his arrest and detention. Accordingly, Chody was an official policymaker for Williamson County.

#### b.  Official Policy

An official policy can include written policy statements, ordinances, or regulations, as well as a widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). A

---

[2] To the extent Lewis alleges that he was humiliated or ridiculed by the arresting officer's comments or having his traffic stop filmed by Live PD, Dkt. 1 ¶¶ 6, 27, such allegations do not rise to the level of a constitutional deprivation for purposes of Section 1983.; *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993) (stating that allegations of verbal abuse do not present actionable claims under Section 1983).

policy or custom is official when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). The existence of a well-established, officially adopted policy will not insulate the municipality from liability when a final policymaker makes the relevant decision and that decision is within the sphere of his final authority. *Bennett*, 74 F.3d at 586. A single decision may create municipal liability if it is made by a final policymaker responsible for that activity. *Id.*

Lewis alleges that Chody, as policymaker for Williamson County, established a custom of encouraging officers to use excessive force to provide entertaining content for Live PD. Dkt. 1 ¶¶ 9-10, 16, 23. Chody allegedly rewarded officers for "creating television spectacle." *Id.* ¶¶ 17-18. Lewis alleges numerous prior incidents of Williamson County officers' use of excessive force after Chody executed the contract with Live PD. *Id.* ¶¶ 12-15. Lewis also alleges that a Williamson County employee tweeted "[g]lad we could make some good TV for the boss man" and "[g]onna try to get some stuff stirred up for y'all tonight." *Id.* ¶ 17. Lewis has sufficiently alleged facts to support his allegation that Williamson County had an official policy or custom of using excessive force due to its relationship with Live PD.

### c.   Nexus

To show that a policy was the "moving force" behind the constitutional violation under Section 1983, there must be "a direct causal link" between the policy and the violation, not merely a "but for" coupling between cause and effect. *Peterson*, 588 F.3d at 848. Lewis alleges that, because of the custom of using excessive force, the officers in the Williamson County jail responded to his panic attack in an unreasonable manner that resulted in his injury. Specifically, Lewis alleges that "Sheriff Chody created a culture around the show that rewarded the escalation of conflict and

violence. The Sheriff's Office runs the Williamson County Jail, where Plaintiff's injuries occurred, and the injuries were a direct result of this culture." Dkt. 1 ¶ 9.

Williamson County argues that Lewis has not pled a causal link between Chody's alleged custom of using excessive force to create "good TV" and Lewis's alleged injury because Live PD cameras were not present at the jail. Dkt. 7 at 9; Dkt. 9 at 1-2. Lewis alleges, however, that Chody's "culture" or custom of using excessive force extended to the jail and caused the constitutional violation. The facts alleged in Lewis's Complaint state a plausible claim that Williamson County's policy was the "moving force" behind Lewis's Fourteenth Amendment deprivation. Accordingly, the undersigned recommends that the District Court deny Williamson County's Motion to Dismiss Lewis's Section 1983 claim for excessive force.

### 3.  Failure to Train and Failure to Supervise

Lewis also claims that Williamson County's failure to train its officers sufficiently to deal with criminal suspects suffering from mental health disorders caused the deprivation of his constitutional rights. Specifically, Lewis asserts that Williamson County failed to adequately train its officers in de-escalation when dealing with suspects having a panic attack or suffering from a mental health disorder. Dkt. 1 ¶ 23. Williamson County argues that Lewis has failed to plead any factual allegations supporting his failure-to-train and failure-to-supervise claims. Dkt. 7 at 10-11.

"Even within the difficult world of *Monell* liability, failure-to-train claims are especially difficult to establish." *Anderson v. Marshall Cnty.*, 637 F. App'x 127, 134 (5th Cir. 2016) (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). To avoid dismissal of a Section 1983 failure-to-train claim, a plaintiff must plead sufficient facts to show that (1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a moving force in causing the constitutional violation; and (3) the municipality was deliberately indifferent in adopting its

8

training policy. *Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010). To state a Section 1983 claim for failure to supervise, a plaintiff must show that (1) the supervisor failed to supervise the subordinate official; (2) a causal link exists between the failure to supervise and the violation of plaintiff's rights; and (3) the failure to supervise amounts to deliberate indifference. *Goodman*, 571 F.3d at 395.

There are two means of proving deliberate indifference. *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (citing *City of Canton v. Harris*, 489 U.S. 378, 386-92 (1989)). First, in the proof-by-pattern method, deliberate indifference can be found if municipal employees violate constitutional rights so often that it can be inferred from the pattern of violations that the need for further training must have been plainly obvious to the policymakers. *Id.* This proof-by-pattern method is "ordinarily necessary to establish municipal culpability and causation." *Brd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997).

Second, deliberate indifference may be found through a single incident if a plaintiff can prove that the highly predictable consequence of a failure to train would result in the specific injury suffered. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). This narrow, single-incident exception generally is reserved for those cases in which the government actor was provided no training whatsoever. *Peña v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018). For example, if a policymaker "opts to provide no training whatsoever to police officers concerning the established and recurring constitutional duty not to use excessive deadly force, a factfinder may reasonably infer that the [municipality] acted with the requisite deliberate indifference." *Littell*, 894 F.3d at 625. To plead *Monell* liability under a single-incident exception, "a plaintiff must allege factual content showing (or from which it may be inferred) that the training provided by the municipality was so inadequate that it should have predicted that those deficiencies

would have caused the specific harm alleged, not that more or different training would have prevented it." *Hutcheson v. Dallas Cnty.*, No. 3:17-cv-2021-BN, 2020 WL 1692950, at *6 (N.D. Tex. Apr. 7, 2020), *aff'd* , 994 F.3d 477 (5th Cir. 2021).

Lewis alleges that Williamson County changed its academic standards in its training academy "to lower the amount of training" in 2017. *Id.* ¶ 25. Lewis also alleges that "[t]raining of the department's staff was insufficient regarding de-escalation and other mechanisms to deal with criminal suspects who suffer from a mental health disorder, including but not limited to anxiety or dealing with a suspect having a panic attack." *Id.* ¶ 23. Lewis asserts that deficient training resulted in his injury in the Williamson County jail. *Id.* ¶ 25.

Even if the Court were to find these allegations sufficient to satisfy the first and second elements of a failure-to-train claim, Lewis has not pled sufficient facts to show deliberate indifference. To survive a motion to dismiss, Lewis must plead facts showing that Williamson County was deliberately indifferent in adopting inadequate training procedures and allege with specificity how a particular training program is deficient. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010). Lewis's Complaint contains allegations of previous incidents of excessive force, but none involve individuals suffering from mental illness; thus, they do not support a proof-by-pattern finding of deliberate indifference to inadequate training. *See* Dkt. 1 ¶¶ 12-14; *Dobbins v. City of Dallas*, No. 3:20-cv-1727-K, 2021 WL 4395817, at *7 (N.D. Tex. June 24, 2021), *R. & R. adopted*, 2021 WL 3781927 (N.D. Tex. Aug. 25, 2021) (dismissing failure-to-train claim because plaintiff failed to allege a pattern of similar violations). Nor does Lewis allege that Williamson County provided its officers no training in de-escalation methods under the single-incident exception. *See Ayon v. Austin Indep. Sch. Dist.*, No. 1:19-CV-586-RP, 2020 WL 1536383, at *7-8 (W.D. Tex. Mar. 31, 2020) (dismissing failure-to-train claim under single-

incident exception where plaintiff did not allege complete failure to train). Rather, Lewis alleges that Williamson County staff was insufficiently trained in de-escalation methods, which renders the single-incident exception inapplicable. *See* Dkt. 1 ¶ 23; *Sneed v. Austin Indep. Sch. Dist.*, 487 F. Supp. 3d 584, 596-97 (W.D. Tex. 2020) (dismissing failure-to-train claim because single-incident exception was inapplicable where pleading suggested some training provided).

Because Lewis has not alleged facts showing deliberate indifference by Williamson County, he also fails to state a claim for failure to supervise. *See Goodman*, 571 F.3d at 396 (5th Cir. 2009) (stating that failure to show deliberate indifference in failure-to-train claim eliminated need to address other prongs of supervisory liability); *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 382 (5th Cir. 2005) (same). Accordingly, the undersigned recommends that Lewis's failure-to-train and failure-to-supervise claims under Section 1983 be dismissed.

## B. Americans with Disabilities Act

The ADA forbids discrimination against disabled individuals in major areas of public life, including employment (Title I), public services (Title II), and public accommodations (Title III). *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001). To state a claim under Title II, a plaintiff must allege that (1) he has a qualifying disability; (2) he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) such discrimination is due to his disability. *Hale v. King,* 642 F.3d 492, 499 (5th Cir. 2011). Courts have broadly construed the "services, programs, or activities" language in the ADA to encompass "anything a public entity does." *Salinas v. City of New Braunfels*, 557 F. Supp. 2d 771, 775 (W.D. Tex. 2006) (citation omitted).

> A critical component of a Title II claim for failure to accommodate
> [ ] is proof that the disability and its consequential limitations were
> known by the entity providing public services. Mere knowledge of
> the disability is not enough; the service provider must also have

11

> understood the limitations the plaintiff experienced *as a result* of
> that disability. . . . When a plaintiff fails to request an
> accommodation in this manner, he can prevail only by showing that
> the disability, resulting limitation, and necessary reasonable
> accommodation were open, obvious, and apparent to the entity's
> relevant agents.

*Windham v. Harris Cnty.*, 875 F.3d 229, 236-37 (5th Cir. 2017) (cleaned up).

Lewis's ADA claim is predicated on Williamson County's asserted failure to accommodate his anxiety and depression, which allegedly place "significant limits" on his "cognitive thinking and concentration."[3] Dkt. 1 ¶ 38. Lewis alleges that he informed the officers he suffered from mental health issues. *Id.* ¶ 27. However, Lewis does not allege that he requested an accommodation for the limitations presented by his mental illness. "[T]he ADA requires [municipalities] to reasonably accommodate limitations, not disabilities." *Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 164 (5th Cir. 1996).

In the absence of a request for an accommodation, Lewis must allege that his disability and the necessary accommodation were so open, obvious, and apparent to the officers that a request was unnecessary. *Windham*, 875 F.3d at 237. He does not do so. When mental illness is not obvious, "a disabled plaintiff cannot remain silent and expect the defendant to bear the initial burden of identifying the need for, and suggesting, an appropriate accommodation." *Peña Arita v. Cnty. of Starr, Tex.*, No. 7:19-cv-00288, 2020 WL 5505929, at *7 (S.D. Tex. Sept. 11, 2020) (citing *Taylor*, 93 F.3d at 165) (dismissing ADA claim by detainee who failed to request accommodation for mental illness where his disability and necessary accommodation were not obvious); *Ryburn v. Giddings Indep. Sch. Dist.*, No. 1:16-CV-879-RP, 2017 WL 5761609, at *4 (W.D. Tex. Nov. 27,

---

[3] Mental illness can be a qualifying disability under the ADA if it limits one or more major life activities of an individual. 42 U.S.C. §12102(1)(A); *Dotson v. Bexar Cnty. Hosp. Dist.*, No. SA-19-CV-00083-XR, 2019 WL 6311375, at *8 (W.D. Tex. Nov. 25, 2019); *Dees v. Austin Travis Cnty. Mental Health & Mental Retardation*, 860 F. Supp. 1186, 1189 (W.D. Tex. 1994).

2017) (dismissing ADA claim because plaintiff failed to allege request for accommodation or that disability and necessary accommodation were open, obvious, and apparent). Because Lewis does not allege that he requested an accommodation or that his disability and the necessary accommodation were obvious to the officers, Lewis fails to state a claim under Title II of the ADA.

### C.  Lewis's Request for Leave to Amend

In his Response, Lewis seeks leave to file an amended complaint if the Court finds his pleadings deficient. Dkt. 8 at 9. Courts should freely grant leave to amend when justice so requires. FED. R. CIV. P. 15(a)(2). Courts should deny leave to amend when amendment would cause undue delay or undue prejudice to the opposing party, or the amendment would be futile or in bad faith. *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004). Amendment is futile where it "would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, LLC, 234 F.3d 863, 872-73 (5th Cir. 2000).

Lewis has not offered any additional facts he would plead to cure the deficiencies in his Section 1983 failure-to-train claim, his Section 1983 failure-to-supervise claim, or his ADA claim. Dkt. 8 at 9-10. Without proposed amendments, the Court is unable to assess whether amendment is warranted. *See Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017) (holding that leave to amend is not required where movant fails to apprise court of facts he would plead in amended complaint to cure any deficiencies). Accordingly, Lewis's request for leave to amend should be denied.

### IV.     Recommendation

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** Defendant's Motion to Dismiss (Dkt. 7). The Court **RECOMMENDS** that the District Court **DENY** Defendant's Motion as to Plaintiff's

Section 1983 claim for excessive force, and **GRANT** the Motion and **DISMISS** with prejudice Plaintiff's Section 1983 claims for failure to train and failure to supervise, as well as his ADA claim for failure to accommodate.

The Court **FURTHER RECOMMENDS** that Plaintiff's Request for Leave to Amend be **DENIED**.

## V.   Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on November 4, 2021.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE