# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| SCOTT PHILLIP LEWIS, | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | **Case No. 1:21-cv-00074-LY-SH** |
| | § | |
| WILLIAMSON COUNTY, TEXAS, | § | |
| *Defendant* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

### TO: THE HONORABLE LEE YEAKEL
### UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Williamson County, Texas' Motion to Dismiss Plaintiff's First Amended Complaint, filed February 9, 2022 (Dkt. 37); Plaintiff's Unopposed Motion for Leave to File Response to Motion to Dismiss Amended Complaint, filed April 1, 2022 (Dkt. 39); and Williamson County's Reply, filed April 8, 2022.[1] The Court hereby **GRANTS** Plaintiff's unopposed motion for leave to file his response to Defendant's motion to dismiss.

## I.    Background

In his First Amended Complaint, Plaintiff Scott Phillip Lewis alleges that in 2018, Williamson County, Texas Sheriff Robert Chody entered into a contract allowing law enforcement activities to be filmed for the national television program "Live PD." Dkt. 35 ¶ 8. Lewis alleges that he was pulled over in his vehicle and arrested by officers with the Williamson County Sheriff's Department on or about January 25, 2019. Dkt. 35 ¶¶ 6-7. Lewis further alleges that he was "detained for a prolonged period of time to ensure camera crews of the television show, 'Live PD,'

---

[1] The District Court referred all pending and future motions in this case to the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 16.

could arrive on the scene to record and broadcast," and that he "was transported to a different location . . . to ensure a more suitable filming environment for the television show." *Id.* ¶ 7. Lewis performed a sobriety test after he was pulled over and "perceived the officers and film crew to be attempting to escalate the matter or provoke him." *Id.* ¶ 26.

Lewis was taken to the Williamson County Jail. *Id.* ¶ 9. When he was detained, Lewis alleges, he disclosed to multiple officers that he suffered from mental health issues, including anxiety. *Id.* ¶¶ 11, 27. Lewis alleges that he experienced a panic attack in his jail cell and suffered anxiety after learning that his arrest would be broadcast on national television. *Id*. After Lewis banged on the wall of his cell, a group of officers gathered and one officer entered the cell and pinned him, breaking his shoulder. *Id.* Lewis also alleges that he made two formal requests to Williamson County (the "County") seeking an inquiry into these events, but no investigation took place. *Id.* ¶¶ 16, 28-29, 35. As a result of these events, Lewis asserts that he suffered a "likely permanent injury" to his shoulder, "significant emotional distress," and loss of employment. *Id.* ¶¶ 23, 27.

On January 25, 2021, Lewis filed suit under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act ("ADA"), alleging that Sheriff's Department officers used excessive force against him, in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and intentionally failed to provide him with reasonable accommodations, in violation of Title II of the ADA. Dkt. 1. On November 5, 2021, the undersigned Magistrate Judge issued a Report and Recommendation that the District Court grant in part and deny in part Defendant's Motion to Dismiss (Dkt. 7).[2] On January 26, 2022, the District Court granted Lewis leave to file an amended complaint without ruling on the Report and Recommendation, and the subsequent

---

[2] The Court recommended that the District Court deny Defendant's Motion as to Plaintiff's Section 1983 claim for excessive force and grant the Motion with respect to Plaintiff's Section 1983 claims for failure to train and failure to supervise, as well as his ADA claim for failure to accommodate. Dkt. 22 at 13-14.

complaint is Lewis's live pleading. Dkt. 34. The County seeks dismissal of Lewis's lawsuit for failure to state a claim under Rule 12(b)(6).

## II.     Legal Standard

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry generally is limited to (1) facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

### III.    Analysis

Lewis alleges that Chody, as a policymaker, established a policy and practice of encouraging officers to engage in excessive force to "create 'good TV.'" Dkt. 35 ¶¶ 16, 18, 23. Lewis alleges that the known and obvious consequences of these policies was the violation of his constitutional right to be free from excessive force, rendering the County liable for Chody's actions under Section 1983. *Id.* ¶ 36. Lewis further alleges that Chody failed to properly train and supervise Williamson County officers regarding their interactions with those suffering from mental illness, which resulted in his injury while in custody and violated the ADA's accommodation requirements. *Id.* ¶¶ 23, 27, 39.

The County argues that Lewis has not plausibly alleged a constitutional violation, and even if he has, Lewis has not sufficiently pled that the County had a custom that caused a violation of his constitutional rights. Dkt. 37 at 5. The County also argues that Lewis's ADA claim fails because he does not allege that he is a qualified individual with a disability or that he sought and was intentionally denied a reasonable accommodation. The Court addresses each of the County's arguments in turn.

### A.  Section 1983

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

To state a claim under Section 1983, a plaintiff must: "(1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638

(5th Cir. 2013). Claims under Section 1983 may be brought against persons in their individual or official capacity, or against a governmental entity. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009). It is well established that a municipality or a local governmental unit is not liable under Section 1983 on the theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it 'through some official action or imprimatur.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

### 1. Constitutional Violation

Before considering whether the County can be held liable for the officers' actions, the Court first must determine whether Lewis has alleged a constitutional violation. Lewis argues that an officer broke his shoulder while he was in the Williamson County jail, violating his Fourteenth Amendment rights.[3] Dkt. 35 ¶ 32. The County argues that Lewis's Section 1983 claim fails because he has not sufficiently alleged that he was deprived of his Fourth or Fourteenth Amendment rights.[4]

Pretrial detainees have a constitutional right under the Fourteenth Amendment's Due Process Clause to be free from the use of excessive force. *Kingsley v. Hendrickson*, 576 U.S. 389, 401-02

---

[3] Although Lewis labeled his Section 1983 claim as arising under the Fourth Amendment in his First Amended Complaint, he relies on both the Fourth and the Fourteenth Amendment in his response to the motion to dismiss. Dkt. 39-1 at 8. For his allegations of excessive force occurring after his arrest, the Court construes the claim under the Fourteenth Amendment. *See Esquivel v. Eastburn*, No. SA-20-CV-00377-OLG, 2021 WL 1667132, at *6 (W.D. Tex. Apr. 28, 2021) (construing pretrial detainee's Eighth Amendment claims under Fourteenth Amendment); *Vaughn v. Anaya*, No. EP-19-CV-00340-KC-ATB, 2020 WL 7385841, at *6 (W.D. Tex. Dec. 16, 2020) (construing pretrial detainee's excessive force claims under Fourteenth Amendment).

[4] To the extent Lewis alleges that he was humiliated or ridiculed by the arresting officer's comments or having his traffic stop filmed by Live PD, Dkt. 35 ¶¶ 6, 27, such allegations do not rise to the level of a constitutional deprivation for purposes of Section 1983. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993) (stating that allegations of verbal abuse do not present actionable claims under Section 1983).

(2015). To prove an excessive force claim, "a pretrial detainee must show only that the force purposefully and knowingly used against him was objectively unreasonable." *Id.* at 396-97. "[O]bjective reasonableness turns on the 'facts and circumstances in each particular case.'" *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). A court must assess the reasonableness of the force used "from the perspective and with the knowledge of the defendant officer" and with "deference to policies and practices needed to maintain order and institutional security." *Id.* at 399-400. In determining the objective reasonableness of an officer's use of force, a court should consider the following factors: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Id.* at 397.

Lewis alleges that an officer used unreasonable force after he began banging on the wall of his cell, pinning him in a manner that resulted in a broken shoulder. Dkt. 35 ¶¶ 11, 27. Applying *Kingsley*, the first, fourth, and fifth factors weigh in favor of a finding that that Lewis has stated an excessive force claim. Lewis alleges that he was banging on the wall of his cell, which would not appear to pose a perceived threat or severe security problem, yet he contends that the amount of forced use was enough to break his shoulder. The second factor also weighs in Lewis's favor; a broken shoulder is significantly more serious than the minimal injury required. *See Galada v. Payne*, 421 F. App'x 460, 462 (5th Cir. 2011) ("[W]e require that the plaintiff have suffered at least some form of injury that is more than de minimis.") (citing *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001)). The allegations are insufficient to evaluate the third and sixth factors, i.e., whether the officer attempted to limit the amount of force used or Lewis was actively resisting.

Considered in light of the *Kingsley* factors, the Court finds that Lewis's allegations establish for purposes of the Rule 12(b)(6) motion that the officers' actions were not objectively reasonable. Therefore, Lewis has pled a constitutional violation sufficient to support his excessive force claim at this stage of the case.

### 2. Municipal Liability

To establish municipal liability under Section 1983, a plaintiff must plead facts that plausibly establish (1) an official policy (2) promulgated by the municipal policymaker (3) that was the "moving force" behind the violation of the constitutional right. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

#### a. Policymaker

Whether a particular official has final policymaking authority is a question of state law. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Under Texas law, the county sheriff is the county's final policymaker in the area of law enforcement. *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996). The county sheriff also is the "keeper of the county jail" and responsible for "supervision and control over the jail." TEX. LOC. GOV'T CODE ANN. § 351.041; *Posey v. Sw. Bell Tel. L.P.*, 430 F. Supp. 2d 616, 626-27 (N.D. Tex. 2006). Accordingly, at the time of Lewis's arrest and detention, Chody was an official policymaker for Williamson County.

#### b. Official Policy

An official policy can include written policy statements, ordinances, or regulations, as well as a widespread practice that is "so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). A policy or custom is official when it results from the decision or acquiescence in a longstanding practice of the municipal officer or body with final policymaking authority over the subject matter

of the offending policy. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). A pattern of conduct is considered "tantamount to official policy when it is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson*, 588 F.3d at 850 (quoting *Piotrowski*, 237 F.3d at 579).

Lewis alleges that Chody, as policymaker for Williamson County, established a custom of encouraging officers to use excessive force to provide entertaining content for Live PD. Dkt. 35 ¶¶ 9-10, 16, 23. Chody allegedly rewarded officers for "creating television spectacle." *Id.* ¶¶ 17-18. Lewis also alleges that a Williamson County employee tweeted that he was "[g]lad we could make some good TV for the boss man" after being featured on Live PD, and: "Gonna try to get some stuff stirred up for y'all tonight." *Id.* ¶ 17. To show a pattern of excessive force, Lewis alleges the following four incidents:

- Officers needlessly broke down a door to effectuate a warrant for arrest. *Id.* ¶ 12.
- A SWAT team executed a "no-knock warrant" and used grenades to execute a warrant for a non-violent suspect. *Id.* ¶ 13.
- A minor traffic offense resulted in a deadly police chase. *Id.* ¶ 14.
- An individual died after being repeatedly tased by officers. *Id.* ¶ 14.

Finally, Lewis asserts that the County failed to adequately investigate the two reports he made to the department regarding his allegations in this case. *Id.* ¶¶ 28-29.

In his First Amended Complaint, Lewis fails to specify dates for the first three incidents and admits that the fourth occurred in June 2019, six months after his arrest.[5] While some courts have held that later-occurring incidents can support the existence of a pattern,[6] Lewis must allege at

---

[5] Defendant contends that none of the incidents occurred prior to the relevant date. Dkt. 37 at 10.

[6] *See Ramirez v. Escajeda*, No. EP-17-CV-00193-DCG, 2021 WL 3713064, at *26 (W.D. Tex. Aug. 20, 2021) (finding that four incidents after suicidal arrestee's death could show pattern when prior incidents were alleged and plaintiff's incident could be early in pattern); *Sanchez v. Gomez*, No. EP-17-CV-133-PRM, 2020 WL 1036046, at *16-17 (W.D. Tex. Mar. 3, 2020) (rejecting defendant's argument that all incidents in pattern must be before plaintiff's injury to be probative of causation).

least one incident that occurred before the alleged constitutional violation. *Valle v. City of Houston*, 613 F.3d 536, 548 (5th Cir. 2010) (holding that plaintiffs failed to establish pattern where they presented evidence of incidents occurring only after alleged constitutional violation).

To the extent that Lewis seeks to state a ratification theory of liability, the allegations in his First Amended Complaint fall short. Lewis appears to argue that the County ratified the officers' conduct by issuing a "one page document simply stating 'False/Not true'" in response to his report and failing to otherwise conduct an investigation. Dkt. 35 ¶ 29. It is established that "a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson*, 588 F.3d at 848. In the Fifth Circuit, moreover, the ratification theory has been limited to "extreme factual situations" far more egregious than those Lewis alleges here. *See Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985).

The Court finds that Lewis has sufficiently alleged neither the existence of an official policy through a pattern of conduct nor a ratification theory. Accordingly, he has failed to state a claim against the County for excessive force. Nonetheless, the Court recommends that the claim be dismissed without prejudice should Lewis be able to cure the pleading deficiencies by identifying the dates on which the alleged "prior incidents" occurred.

### 3.  Failure to Train and Failure to Supervise

The Court also finds that Lewis has failed to allege a policy based on Williamson County's failure to train or supervise its officers. To avoid dismissal of Section 1983 failure-to-train and failure-to-supervise claims, the plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts

to deliberate indifference." *Goodman*, 571 F.3d at 395 (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998)).

There are two means of proving deliberate indifference. *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (citing *City of Canton v. Harris*, 489 U.S. 378, 386-92 (1989)). First, in the proof-by-pattern method, deliberate indifference can be found if municipal employees violate constitutional rights so often that it can be inferred from the pattern of violations that the need for further training must have been plainly obvious to the policymakers. *Id.* This proof-by-pattern method is "ordinarily necessary to establish municipal culpability and causation." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997).

Second, deliberate indifference may be found through a single incident if a plaintiff can prove that the highly predictable consequence of a failure to train would result in the specific injury suffered. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). This narrow, single-incident exception generally is "reserved for those cases in which the government actor was provided no training [or supervision] whatsoever." *Peña v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018); *see also Drake v. City of Haltom City*, 106 F. Appx 897, 900 (5th Cir. 2004). For example, if a policymaker "opts to provide no training whatsoever to police officers concerning the established and recurring constitutional duty not to use excessive deadly force, a factfinder may reasonably infer that the [municipality] acted with the requisite deliberate indifference." *Littell*, 894 F.3d at 625. To plead *Monell* liability under a single-incident exception, the plaintiff must allege that "the training [or supervision] provided by the municipality was so inadequate that it should have predicted that those deficiencies would have caused the specific harm alleged, not that more or different training [or supervision] would have prevented it."

*Hutcheson v. Dallas Cnty.*, No. 3:17-cv-2021-BN, 2020 WL 1692950, at *6 (N.D. Tex. Apr. 7, 2020), *aff'd*, 994 F.3d 477 (5th Cir. 2021).

Lewis alleges that the training provided by the County was "insufficient regarding de-escalation and other mechanisms to deal with criminal suspects who suffer from a mental health disorder, including but not limited to anxiety or dealing with a suspect having a panic attack." Dkt. 35 ¶ 23. Lewis points out that Sheriff Chody disbanded the Williamson County Crisis Intervention Team ("CIT"), a "community partnership" between law enforcement, mental health professionals, and individuals living with mental health problems, which would have had "trained staff to deal with the situation and avoid the escalation." *Id.* ¶ 25.1, 25.3.[7] He alleges that the decision to end the CIT program rendered the department's training and supervision inadequate. *Id.* ¶ 25.2. Lewis further alleges that the County was aware that a significant number of inmates in the county jail have mental health issues. *Id.* ¶ 25.1. Lewis argues that these deficiencies resulted in his injury. *Id.* ¶¶ 25, 25.5.

The Court finds that Lewis has not pled sufficient facts to show deliberate indifference for either claim. While Lewis identifies specific deficiencies in the County's training program, he fails to plead facts establishing deliberate indifference through the proof-by-pattern method or the single-incident exception.

Regarding proof by pattern, Lewis did not allege that any of the four incidents of excessive force he identifies occurred before his arrest, or that those incidents involved individuals suffering from mental health problems similar to his. The remaining incident did involve an individual with a mental health issue, but the County's alleged failure to supervise and train related to the provision of "medical help" by officers rather than use of excessive force. Dkt. 35 ¶ 25.4. *See Dobbins v.*

---

[7] This paragraph is incorrectly numbered 26.3. Dkt. 35 at 9.

*City of Dallas*, No. 3:20-cv-1727-K, 2021 WL 4395817, at *7 (N.D. Tex. June 24, 2021), *R. & R. adopted*, 2021 WL 3781927 (N.D. Tex. Aug. 25, 2021) (dismissing failure-to-train claim because plaintiff failed to allege a pattern of similar violations); *see also Ayon v. Austin Indep. Sch. Dist.*, 2020 WL 1536383, at *7 (W.D. Tex. Mar. 31, 2020) (dismissing failure-to-train claim because one prior incident, "while indisputably egregious[,] is not enough to establish a pattern under current Fifth Circuit law") (citing *Peterson*, 588 F.3d at 850).

Lewis does not satisfy the narrow single-incident exception because he does not allege that Williamson County officers received no supervision or training regarding the constitutional violation at issue. *See Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 386 (5th Cir. 2005) (noting that courts have applied single-incident exception when they find complete failure to train and supervise, not failure in one limited area alone). Rather, Lewis alleges that Williamson County staff were insufficiently trained in de-escalation methods and crisis intervention. *See* Dkt. 35 ¶¶ 23, 25.4. Because Lewis alleges a failure to train in one limited area involving the use of force, the single-incident exception is inapplicable. *See Davis*, 406 F.3d at 386; *Littell*, 894 F.3d at 627 (distinguishing situations in which "additional training would have been helpful"); *Sneed v. Austin Indep. Sch. Dist.*, 487 F. Supp. 3d 584, 596-97 (W.D. Tex. 2020) (dismissing failure-to-train claim because single-incident exception was inapplicable where pleading alleged failure to train on "cultural issues" but did not allege complete failure to train on discrimination and harassment).

Because Lewis has not alleged facts showing deliberate indifference by the County, there is no need to address the other prongs of supervisory liability. *See Goodman*, 571 F.3d at 396 (5th Cir. 2009). Accordingly, the Court recommends that Lewis's failure-to-train and failure-to-supervise claims under Section 1983 be dismissed with prejudice.

**B. Americans with Disabilities Act**

The ADA forbids discrimination against disabled individuals in major areas of public life, including employment (Title I), public services (Title II), and public accommodations (Title III). *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001). To state a claim under Title II, a plaintiff must allege that (1) he has a qualifying disability; (2) he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) such discrimination is due to his disability. *Hale v. King,* 642 F.3d 492, 499 (5th Cir. 2011).

Lewis's ADA claim is predicated on the County's asserted failure to accommodate his anxiety and depression, which allegedly place "significant limits" on his "cognitive thinking and concentration."[8] Dkt. 35 ¶ 38. Lewis alleges that he informed County officers he suffered from mental health issues but does not allege that he requested an accommodation for the limitations presented by his mental illness. *Id.* ¶¶ 11, 27.

"[T]he ADA requires [municipalities] to reasonably accommodate limitations, not disabilities." *Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 164 (5th Cir. 1996). In the absence of a request for an accommodation, Lewis must allege that his disability and the necessary accommodation were so open, obvious, and apparent to the officers that a request was unnecessary. *Windham v. Harris Cnty.*, 875 F.3d 229, 237 (5th Cir. 2017). The Fifth Circuit has held that "outwardly visible disabilities" like "blindness, deafness, or being wheelchair-bound" are open and obvious, *id.* at 238, whereas mental disabilities often are not apparent, *Taylor*, 93 F.3d at 165.

---

[8] Mental illness can be a qualifying disability under the ADA if it limits one or more major life activities of an individual. 42 U.S.C. §12102(1)(A); *Dotson v. Bexar Cnty. Hosp. Dist.*, No. SA-19-CV-00083-XR, 2019 WL 6311375, at *8 (W.D. Tex. Nov. 25, 2019); *Dees v. Austin Travis Cnty. Mental Health & Mental Retardation*, 860 F. Supp. 1186, 1189 (W.D. Tex. 1994).

Lewis does not allege that his mental health issues are open, obvious, and apparent. When mental illness is not obvious, "a disabled plaintiff cannot remain silent and expect the defendant to bear the initial burden of identifying the need for, and suggesting, an appropriate accommodation." *Peña Arita v. Cnty. of Starr, Tex.*, No. 7:19-cv-00288, 2020 WL 5505929, at *7 (S.D. Tex. Sept. 11, 2020) (cleaned up) (dismissing ADA claim by detainee who failed to request accommodation for mental illness where his disability and necessary accommodation were not obvious); *Ryburn v. Giddings Indep. Sch. Dist.*, No. 1:16-CV-879-RP, 2017 WL 5761609, at *4 (W.D. Tex. Nov. 27, 2017) (dismissing ADA claim because plaintiff failed to allege request for accommodation or that disability and necessary accommodation were open, obvious, and apparent). Because Lewis does not allege that he requested an accommodation or that his disability and the necessary accommodation were obvious to the officers, Lewis fails to state a claim under Title II of the ADA.

## IV.    Recommendation

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendant's Motion to Dismiss (Dkt. 37), **DISMISS** Plaintiff's Section 1983 claim for excessive force without prejudice, and **DISMISS** Plaintiff's Section 1983 claim for failure to train and failure to supervise and his ADA claim for failure to accommodate with prejudice.

## V.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen

14

(14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

The Clerk is directed to mail Plaintiff a copy of this Report and Recommendation by certified mail, return receipt requested.

**SIGNED** on June 15, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE