# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **SCOTT PHILLIP LEWIS,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **Case No. 1:21-cv-00074-LY-SH** |
| | § | |
| **WILLIAMSON COUNTY, TEXAS,** | § | |
| *Defendant* | § | |

## ORDER AND REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

### TO: THE HONORABLE LEE YEAKEL
### UNITED STATES DISTRICT JUDGE

Now before the Court are Plaintiff's Motion to Cause Defendant to File Motion to Withdraw as Attorney, filed August 4, 2022 (Dkt. 64); Defendant Williamson County, Texas' Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), filed September 23, 2022 (Dkt. 71); Eric A. Hudson's Motion to Withdraw as Counsel, filed December 1, 2022 (Dkt. 76); and the associated response and reply briefs.[1]

### I.    Background

Plaintiff Scott Phillip Lewis brings this civil rights lawsuit against Williamson County, Texas (the "County") alleging that his constitutional and statutory rights were violated when he was arrested and detained by the Williamson County Sheriff's Department. Lewis alleges that on the evening of January 25, 2019, he was pulled over by Williamson County officers while driving his car and subjected to a field sobriety test. Dkt. 69 (Second Amended Complaint) ¶ 9. Lewis alleges that a film crew from the reality television show LivePD was with the officers during his

---

[1] The District Court referred all nondispositive and dispositive motions in this case to the undersigned Magistrate Judge for resolution or Report and Recommendation, respectively, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 16.

traffic stop, detention, and arrest. *Id.* ¶ 6.[2] Lewis "perceived the officers and film crew to be attempting to escalate the matter or provoke him," alleging that Officer Grayson Kennedy "repeatedly point[ed] out that Plaintiff urinated on himself after the completion of the filmed field sobriety test." *Id.* ¶¶ 9, 11. Lewis alleges that the traffic stop "ended with Plaintiff being pushed into the side of the police vehicle after Plaintiff asked the officer his name." *Id.* ¶ 12.

Lewis was detained, arrested, and booked him into Williamson County Jail. *Id.* ¶ 13. Lewis alleges that he disclosed to officers and jail staff that he suffered from mental health issues, including anxiety. *Id.* ¶¶ 13, 22. Lewis alleges that after he discovered his arrest was broadcast on LivePD without his consent, he "immediately experienced an intense increase in mental health symptoms leading to a panic attack or manic episode" in his jail cell. *Id.* ¶ 14. After he "banged on the windows," Lewis alleges, a group of officers gathered around his cell and one entered the cell using excessive force by the following "takedown tactic": "A 'full nelson' was used where the officer's knee [ ] was in Plaintiff's back forcing Plaintiff's left rib into a concrete step while Plaintiff's arms being simultaneously pulled backwards with pressure applied to the neck area." *Id.* ¶ 15.

Lewis alleges that he was then "strapped to an emergency restraint chair by having his wrists and ankles tied" and left "unattended for a period of time with mental health symptoms flaring." *Id.* ¶¶ 15-16. After he complained of shoulder pain, Lewis alleges, the officers tightened the straps over his injured shoulder. *Id.* ¶ 16. After getting out of the restraint chair, Lewis was returned to his jail cell, assigned a top bunk, and told to make the bed. *Id.* ¶ 17. Lewis alleges that he was "in excruciating pain; his arm limp and hanging, in clear sight of Williamson County

---

[2] Lewis alleges that LivePD "capitalized on exploiting serious criminal justice matters into television spectacle" and that "[t]hose susceptible of mental health symptoms, such as Plaintiff, were move vulnerable for mistreatment on the show." Dkt .69 ¶ 7.

Jail employees." *Id.* Nonetheless, Lewis alleges, he was denied medical care and never received treatment for his injured shoulder. *Id.*

Lewis alleges that Williamson County Sheriff Robert Chody "encouraged officers to use excessive force, especially for suspects on LivePD" and created a culture that rewarded "good TV" in order to "enhance his celebrity" status. *Id.* ¶¶ 51-52. Lewis alleges that "Chody's culture of indifference is further illustrated through his custom of hiring deputies with past histories of excessive violence and dishonesty," and that "Chody would retaliate against and punish those who did not adhere to his questionable policies, including termination." *Id.* ¶ 54.

On January 25, 2021, Lewis filed this suit against the County under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act ("ADA"). Lewis alleges that Williamson County Sheriff's Department officers used excessive force against him during his detention, in violation of the Fourth and Fourteenth Amendments to the United States Constitution; and that they intentionally failed to provide him with reasonable accommodations for his mental disabilities, in violation of Title II of the ADA. Dkt. 1. Lewis seeks to hold the County liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

On March 2, 2021, the County moved to dismiss under Rule 12(b)(6), arguing that Lewis had not plausibly alleged a constitutional violation, and that even if he had, Lewis failed to plead that any County policy or failure in training or supervision caused the violation. Dkt. 7 at 8-9. The County also argued that Lewis's ADA claim failed because he did not allege that he was a qualified individual with a disability or that he sought and was intentionally denied a reasonable accommodation. On November 5, 2021, the undersigned Magistrate Judge recommended that the District Court deny the motion to dismiss as to Lewis's excessive force claim and grant the motion as to Lewis's failure to train and supervise and ADA claim. Dkt. 22 at 13-14. Lewis

objected to the Report and Recommendation and also moved for leave to file an amended complaint. Dkt. 29. On January 26, 2022, the District Court granted Lewis leave to file a first amended complaint and dismissed the County's motion to dismiss as moot. Dkt. 34.

In his First Amended Complaint, Lewis again alleged a *Monell* claim for excessive force and an ADA claim. Dkt. 35. Defendant filed a second motion to dismiss under Rule 12(b)(6). Dkt. 37. On June 15, 2022, the undersigned Magistrate Judge recommended that the District Court dismiss without prejudice Lewis's Section 1983 claim for excessive force[3] and dismiss with prejudice both Lewis's Section 1983 claim for failure to train and failure to supervise and his ADA claim for failure to accommodate. Dkt. 44.

Lewis's attorney then was permitted to withdraw. Dkt. 43. Proceeding *pro se*, Lewis was granted leave to file a second amended complaint. Dkt. 67; Dkt. 68. In his Second Amended Complaint, which is his live pleading, Lewis alleges (1) Fourth, Sixth, Eighth, and Fourteenth Amendment claims under Section 1983; (2) denial of disability benefits under the ADA and Section 504 of the Rehabilitation Act; and (3) negligence under the Texas Tort Claims Act. Dkt. 69. Defendant moves to dismiss all of Lewis's claims under Rule 12(b)(6).

## II.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Supreme Court has explained that a complaint must contain

---

[3] The undersigned Magistrate Judge recommended that the excessive force claim be dismissed without prejudice "should Lewis be able to cure the pleading deficiencies by identifying the dates on which the alleged 'prior incidents' occurred." Dkt. 44 at 9.

sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry generally is limited to (1) facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

### III.    Analysis

The Court addresses in turn Lewis's claims under Section 1983, the ADA and the Rehabilitation Act, and the Texas Tort Claims Act.

### A.  Section 1983

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

To state a claim under Section 1983, a plaintiff must: "(1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). Claims under Section 1983 may be brought against persons in their individual or official capacity, or against a governmental entity. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009). It is well established that a municipality or a local governmental unit is not liable under Section 1983 on the theory of *respondeat superior. Monell*, 436 U.S. at 691. "A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it 'through some official action or imprimatur.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

Lewis alleges that the County should be held liable for the following constitutional violations: (1) excessive force, in violation of the Fourth and Fourteenth Amendments; (2) cruel and unusual punishment, in violation of the Eighth Amendment; (3) high-speed police car chase, in violation of the Fourteenth Amendment; (4) failure to provide medical care, in violation of the Fourteenth Amendment; (5) denial of procedural due process under the Sixth and Fourteenth Amendments; and (6) failure to train and supervise officers, in violation of the Fourth and Fourteenth Amendments. Before considering whether the County can be held liable for the officers' actions, the Court determines whether Lewis has alleged any constitutional violations.

### 1. Excessive Force Claims

#### a. Pushing

Lewis alleges that during his arrest, Officer Kennedy "acted objectively unreasonable by pushing Plaintiff against the cruiser after he asked for [Lewis's] name." Dkt. 69 ¶ 95. Lewis contends that this constituted excessive force, in violation of his Fourth Amendment rights. The

County argues that Lewis's claim fails because he has not alleged an actual injury. The Court agrees.

To prevail on a Fourth Amendment excessive force claim, a plaintiff must show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012) (quoting *Collier v. Montgomery*, 569 F.3d 214, 218 (5th Cir. 2009)). Generally, to maintain a claim for excessive force, a plaintiff need not demonstrate a significant injury, but the injury must be more than de minimis. *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005). The extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances. *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017). "Any force found to be objectively unreasonable necessarily exceeds the de minimis threshold, and, conversely, objectively reasonable force will result in de minimis injuries only." *Id.* (quoting *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013)). Thus, "as long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Id.* (quoting *Brown*, 524 F. App'x at 79).

Lewis does not allege that he suffered any injury resulting from Kennedy pushing him. Lewis must allege "some injury" that resulted from the use of force. *Miller v. Salvaggio*, No. SA-20-CV-00642-JKP, 2021 WL 3474006, at *10 (W.D. Tex. Aug. 6, 2021) (granting motion to dismiss where plaintiffs did not allege they suffered an injury); *Flores v. Rivas*, No. EP-18-CV-297-KC, 2020 WL 563799, at *6 (W.D. Tex. Jan. 31, 2020) (granting motion to dismiss where plaintiff did not allege she suffered an injury resulting from being pushed by police officer). Lewis's excessive force claim based on Kennedy's pushing him into the police car fails.

### b. Full Nelson and Restraint

Lewis alleges that after he was detained, Williamson County officers used excessive force when (1) they used a full nelson restraint technique on him, breaking his shoulder, and (2) placed him in an emergency restraint chair. In its Motion to Dismiss, the County addresses only Lewis's claim related to the emergency restraint chair. Thus, it has failed to meet its burden under Rule 12(b)(6) as to Lewis's full nelson excessive force claim, and the Court need only address the emergency restraint chair claim.

Pretrial detainees have a constitutional right under the Fourteenth Amendment's Due Process Clause to be free from the use of excessive force. *Kingsley v. Hendrickson*, 576 U.S. 389, 401-02 (2015). To prove an excessive force claim, "a pretrial detainee must show only that the force purposefully and knowingly used against him was objectively unreasonable." *Id.* at 396-97. "[O]bjective reasonableness turns on the 'facts and circumstances in each particular case.'" *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). A court must assess the reasonableness of the force used "from the perspective and with the knowledge of the defendant officer" and with "deference to policies and practices needed to maintain order and institutional security." *Id.* at 399-400. In determining the objective reasonableness of an officer's use of force, a court should consider these factors: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Id.* at 397.

Lewis alleges that after his shoulder was broken, he was strapped him to an emergency restraint chair "by having his wrists and ankles tied," and the straps were "tightened over his

injured shoulder" when he complained that his shoulder was in pain, causing him physical pain and emotional distress. Dkt. 69 ¶¶ 16, 19. Lewis also alleges that after he was removed from the chair, jail employees assigned him a top bunk bed, which caused him to experience "excruciating pain" when he climbed up. *Id.* ¶ 17.

"Once a prisoner has been subdued, using gratuitous force on him is unreasonable." *Preston v. Hicks*, 721 F. App'x 342, 345 (5th Cir. 2018) (citing *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016)). Even if the officers employed reasonable and proportional force when they placed Lewis in the emergency restraint chair, Lewis alleges that the force used became excessive or unreasonable after he was restrained. *See Brooks v. Taylor Cnty.*, No. 1:20-CV-049-H, 2021 WL 4458380, at *13 (N.D. Tex. Sept. 29, 2021) (denying summary judgment on excessive force claim where, under plaintiff's version of events, plaintiff was left in emergency restraint chair for prolonged period without proper care or decontamination of pepper spray on his face). The Court must "accept as true the allegations of the complaint, together with any reasonable inferences that may be drawn therefrom." *Ryland v. Shapiro*, 708 F.2d 967, 969 (5th Cir. 1983). The Court finds that Lewis has sufficiently pled a plausible excessive force claim related to the restraint chair.

### 2. Eighth Amendment

Lewis alleges that the County's policies related to LivePD "were used maliciously and sadistically for the purpose of inflicting Plaintiff mental an emotional harm." Dkt. 69 ¶ 100. Lewis, who is not a convicted prisoner, cannot assert a violation of his Eighth Amendment rights. *Gomez v. Hernandez*, No. SA-20-CV-01252-XR, 2022 WL 17331263, at *3 (W.D. Tex. Nov. 28, 2022) ("The Eighth Amendment, however, applies only to the treatment of convicted persons.") (citing *Whitley v. Albers*, 475 U.S. 312 (1986)). Even if the Court were to construe

Lewis's claim under the Fourteenth Amendment, Lewis essentially has asserted a state tort claim for intentional infliction of emotional distress, which, by itself, cannot amount to a constitutional violation. *Thomas v. Hays Cnty., Tex.*, No. A-05-CA-707-SS, 2006 WL 8432635, at *4 (W.D. Tex. Feb. 16, 2006) (citing *Voyticky v. Village of Timberlake*, 412 F.3d 669, 678 (6th Cir. 2005)); *Dibrell v. Huber*, No. Civ.A.H.-04-4854, 2006 WL 14570, at *4 (S.D. Tex. Jan. 3, 2006)); *see also Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993) (stating that allegations of verbal abuse do not present actionable claims under Section 1983).

### 3. High-Speed Chase

Lewis also alleges that before he was pulled over and arrested on the evening of July 25, 2019, he was followed "by a civilian vehicle, for more than 18 minutes, who Plaintiff perceived was following him and a potential threat." Dkt. 69 ¶ 8. Lewis alleges that he was chased by the "civilian vehicle," as follows:

> Plaintiff accelerated and dispatch encourages the civilian to continue to follow knowing speeds are increasing, effectively enabling the civilian to pursue the high speed chase. When police lights were spotted, plaintiff pulled over and was subsequently detained to perform a field sobriety test after being transported to a different location.

*Id.* ¶ 141. Lewis argues that these facts constitute an unconstitutional "high-speed chase."

Lewis fails to show a violation of his Fourteenth Amendment rights because the alleged high-speed chase resulted in no injury to him. But even if Lewis had alleged an injury, his claim would fail. In *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), the Supreme Court laid out standards for determining whether a police pursuit resulting in harm violates the injured party's substantive due process rights. The Court stated that only "conscience shocking" or "the most egregious official conduct" is so arbitrary as to violate due process. *Id.* at 846-47 & n.8. Due process does not "impos[e] liability whenever someone cloaked with state authority causes

harm," and "negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id.* at 848-49. In the context of high-speed police chases, even deliberate indifference or recklessness cannot state a claim under the due process clause. *Id.* at 852-53. Accordingly, "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." *Id.* at 854.

Lewis has presented no facts that would support a reasonable inference that the officers' intent was to cause harm. *See Lewis*, 523 U.S. at 854 ("[A] purpose to cause harm . . . ought to be needed for due process liability in a pursuit case."); *Smith v. New Orleans City*, No. CV-20-949, 2020 WL 6582284, at *7 (E.D. La. Nov. 10, 2020) ("[E]ven if the officers made the conscious decision to pursue the vehicle against internal policy, plaintiffs have not presented any facts that would support a reasonable inference that the officers' intent was to cause harm."). The Court finds that Lewis has failed to plausibly allege a violation of the Fourteenth Amendment right to due process.

### 4.  Alleged *Brady* Violation

Lewis alleges that his criminal defense counsel requested LivePD's recordings of his arrest from the County, but the County stated it no longer had them. Lewis alleges that the recordings likely were destroyed by LivePD producers within 30 days of his arrest in accordance with the County's contract with LivePD, which Lewis argues violates *Brady v. Maryland*, 373 U.S. 83 (1963).

In *Brady*, 373 U.S. at 87, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." The Court has since explained that:

> The *Brady* rule is based on the requirement of due process. Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur. Thus, the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial.

*United States v. Bagley*, 473 U.S. 667, 675 (1985). Therefore, "suppression of evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial." *Id.* at 678. If a defendant is never tried, convicted, or sentenced, there can be no *Brady* violation. *See Matthew v. Johnson*, 201 F.3d 353, 361 (5th Cir. 2000) ("Because a *Brady* violation is defined in terms of the potential effects of undisclosed information on a judge's or jury's assessment of guilt, it follows that the failure of a prosecutor to disclose exculpatory information to an individual waiving his right to trial is not a constitutional violation.").[4] Lewis cannot allege that he was prejudiced in violation of his due process rights because the charges against him were dismissed. *Accord James v. City of Plaquemine, La.*, No. 18-858-JWD-EWD, 2019 WL 4452834, at *7 (M.D. La. Sept. 17, 2019) (dismissing claim of *Brady* violation where charges were dismissed before trial).

### 5. Sixth Amendment

Lewis also alleges that the County Attorney's Office violated his Sixth Amendment right to a speedy trial. Lewis cannot allege a Section 1983 claim for damages based on a Sixth Amendment violation because the only remedy for such a violation is dismissal of the criminal charges.

---

[4] *See also Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999) ("[T]he withholding or destruction of evidence violates a criminal defendant's constitutional rights only if, as a result of the withholding or destruction of evidence, the criminal defendant is denied a fair trial."); *Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir. 1998) ("Plaintiff, however, was never convicted and, therefore, did not suffer the effects of an unfair trial. As such, the facts of this case do not implicate the protections of *Brady*."); *McKune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988) ("Because the underlying criminal proceeding terminated in appellant's favor, he has not been injured by the act of wrongful suppression of exculpatory evidence.").

*Betterman v. Montana*, 578 U.S. 437, 444 (2016); *Quinn v. Roach*, 326 F. App'x 280, 290 (5th Cir. 2009). Because the charges against Lewis have been dismissed, the Court cannot grant any relief on this claim.

## B. Municipal Liability Based on Policies

The Court next considers whether Lewis can hold the County liable for excessive force or failure to provide medical care based on the County's policies. Lewis identifies Chody as the relevant policymaker for the policies of excessive force and failure to provide medical care. Whether a particular official has final policymaking authority is a question of state law. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Under Texas law, the county sheriff is the county's final policymaker in the area of law enforcement. *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996). The county sheriff also is the "keeper of the county jail" and responsible for "supervision and control over the jail." TEX. LOC. GOV'T CODE ANN. § 351.041; *Posey v. Sw. Bell Tel. L.P.*, 430 F. Supp. 2d 616, 626-27 (N.D. Tex. 2006). Accordingly, at the time of Lewis's arrest and detention, Chody was an official policymaker for the County.

### 1. Excessive Force

To establish municipal liability under Section 1983, a plaintiff must plead facts that plausibly establish (1) an official policy (2) promulgated by the municipal policymaker (3) that was the "moving force" behind the violation of the constitutional right. *Piotrowski*, 237 F.3d at 578. An official policy can include written policy statements, ordinances, or regulations, as well as a widespread practice that is "so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). A policy or custom is official when it results from the decision or acquiescence in a longstanding practice of the municipal officer or body with final policymaking authority over the subject

matter of the offending policy. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). A pattern requires "sufficiently numerous prior incidents," rather than "isolated instances." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989) (citations omitted). A pattern also requires similarity and specificity: "Prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005). To show that a policy was the "moving force" behind the constitutional violation under Section 1983, there must be "a direct causal link" between the policy and the violation, not merely a "but for" coupling between cause and effect. *Peterson*, 588 F.3d at 848.

### a. Official Policy

Lewis asserts that the County has a policy of encouraging and encouraging physical violence. Dkt. 69 ¶¶ 29, 90. Lewis alleges that Chody, as policymaker for the County, established a custom of encouraging officers to use excessive force with or without Live PD cameras present. *Id.* ¶¶ 28, 29. As evidence of a pattern, Lewis identifies eight incidents in which Williamson County Sheriff's Department officers allegedly used excessive force:

- In April 2019, an officer pulled over an individual for a minor traffic violation. The officer allegedly shoved the individual to the ground and pressed his knee into her back and shoulder. *Id.* ¶ 30.
- In April 2019, an officer responded to a 911 call involving a person who sustained a head injury after a tool malfunctioned. The officer allegedly hit the individual in the head and slammed him to the ground. *Id.* ¶ 31.
- In February 2019, during a DWI arrest, an officer allegedly used tasers, bean bag rounds, and K-9 units on an unconscious individual. *Id.* ¶ 32.
- In 2018, an individual was allegedly restrained for too long after a DWI arrest, resulting in severe damage to his hands and wrists. *Id.* ¶ 33.
- Officers needlessly broke down a door to execute an arrest warrant. *Id.* ¶ 56.
- In May 2019, a SWAT team executed an arrest warrant for a misdemeanor, during which a deputy allegedly pointed a gun to a ten-month-old baby's head. *Id.* ¶ 57.

- In March 2019, an officer allegedly engaged an individual in a high-speed chase after he failed to dim his headlights. Once the person was pulled over, he died after being repeatedly tased by officers. *Id.* ¶ 58.
- In June 2019, an individual was pulled over for a minor traffic violation and allegedly assaulted by five deputies. *Id.* ¶ 59.

The County responds that the incidents do not establish the existence of widespread policy, and that Lewis does not cite a single example of an excessive use of force that occurred before his arrest. The County also suggests that seven incidents of excessive force in a two-year period[5] is insufficient to avoid dismissal.

District courts in the Fifth Circuit have found varying numbers of incidents necessary to establish a pattern representing a custom on a motion to dismiss. *See Moreno v. City of Dallas*, No. 3:13-CV-4106-B, 2015 WL 3890467, at *8 (N.D. Tex. June 18, 2015) (collecting cases). Many cases cited by the County are not directly applicable at the motion to dismiss stage. *See* Dkt. 71 at 7 (citing *Fuentes v. Nueces Cnty.*, 689 F. App'x 775, 778 (5th Cir. 2017) (affirming grant of summary judgment); *Peterson*, 588 F.3d at 850-851 (5th Cir. 2009) (same); *Piotrowski*, 237 F.3d at 581 (reversing jury verdict)); *see also Sinegal v. City of El Paso*, No. EP-19-CV-107-KC, 2020 WL 13442013, at *16 (W.D. Tex. July 6, 2020) (stating that decisions addressing what is required to establish a pattern at summary judgment are "of somewhat limited applicability" at motion to dismiss stage).[6]

In deciding whether a plaintiff has properly alleged a custom at the motion to dismiss stage, courts have considered the number of prior incidents alleged as well as the "context" and "other allegations" in the complaint. *Id.* at *17. In *Flanagan v. City of Dallas, Tex.*, 48 F. Supp. 3d 941,

---

[5] Lewis identifies an eighth incident but does not allege when it occurred.

[6] The County also cites *Clark v. Thompson*, 850 F. App'x 203, 208 (5th Cir. 2021), in which the court held that eighty-two "generic complaints" would not "support an inference of a specific custom of violating constitutional rights." *See* Dkt. 71 at 7. The specificity of Lewis's allegations surpasses the "generic complaints" in that case.

945 (N.D. Tex. 2014), the district court held that plaintiffs who alleged statistics, twelve past incidents (three in detail), and statements by city officials had alleged sufficient facts to survive a motion to dismiss. Similarly, Lewis alleges additional context surrounding the alleged policy, including that Sheriff Chody "encouraged officers to use excessive force, especially for suspects on LivePD" in order to "enhance his celebrity" status, and that officers were rewarded for acting in conformance with this policy, including by being awarded the title, "WilCo Badass." Dkt. 69 ¶¶ 28, 52.

The County also argues that Lewis does not identify any incident of allegedly excessive force before his arrest. While Lewis identifies only one such incident, the others are close enough in time to plausibly suggest that a policy existed at the time of Lewis's arrest in January 2019. In *McElvy v. Southewestern Corr., LLC*, No. 3:19-CV-1264-N, 2021 WL 4476762, at *6 (N.D. Tex. Sept. 29, 2021), the court found that plaintiffs adequately alleged a policy of ignoring inmates' medical concerns as of 2013 even though most of the deaths identified by plaintiffs occurred after that year. The court found that, in this circumstance, the allegations are sufficient if the plaintiff alleges actual or constructive knowledge of the policy. *Id.* Lewis has alleged that Chody, the policymaker, had actual knowledge of the relevant policy. The Court therefore finds that Lewis has adequately alleged a policy.[7]

### b. Nexus

Lewis also has adequately alleged that the policy was the "moving force" behind the constitutional violations. Lewis alleges that, because of the custom of using excessive force, the officers in Williamson County Jail responded to his panic attack in an unreasonable manner that

---

[7] The Court does not find that the County had a separate policy of using the emergency restraint chair in an unconstitutional manner. Lewis alleges only one prior incident involving the use of the chair, which is insufficient under Fifth Circuit law to establish a policy or custom. *See Ayon v. Austin Indep. Sch. Dist.*, No. 1:19-CV-586-RP, 2020 WL 1536383, at *5 (W.D. Tex. Mar. 31, 2020).

resulted in his injury. In particular, Lewis alleges that "Chody created a culture not to de-escalate extremely serious and life-altering police interactions with the community," and that this culture was prevalent with or without LivePD cameras present. Dkt. 69 ¶ 29, 53. These facts state a plausible claim that the County's policy was the "moving force" behind Lewis's Fourteenth Amendment deprivation. Accordingly, the undersigned recommends that the District Court deny the County's motion to dismiss Lewis's Section 1983 claim for excessive force related to the "full nelson" and restraint allegations.

### 2.  Not Providing Medical Care

Net, Lewis alleges that the County had a policy of using the restraint chair as a punishment for pretrial detainees experiencing mental health symptoms. The County responds that Lewis has not alleged that the officers were subjectively aware there was an excessive risk to Lewis's health or that their actions resulted from the County's policies.

Pretrial detainees have a constitutional right to medical care and protection from harm during their confinement. *Brumfield v. Hollins*, 551 F.3d 322, 327 (5th Cir. 2008). The legal standard used to measure the due process rights of a pretrial detainee depends on whether a challenge is brought to the constitutionality of a "condition of confinement" or to "an episodic act or omission of an individual officer." *Est. of Henson v. Wichita Cnty., Tex.*, 795 F.3d 456, 462 (5th Cir. 2015). Although claims for failure to provide medical care generally are brought as episodic acts or omissions, a plaintiff may assert a conditions of confinement claim based on injuries suffered as a result of not receiving proper medical attention if the plaintiff implicates the jail's system of providing medical care to inmates, not the acts or omissions of individuals. *Id.* at 463. Because Lewis's claims implicate the acts of individuals, the Court evaluates the claim under the episodic act or omission standard.

To hold a municipality liable, the plaintiff must allege (1) a municipal employee's subjective indifference, and (2) that the municipal employee's act "resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference to the [plaintiff's] constitutional rights." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999). Assuming that Lewis has alleged that the Williamson County officers were subjectively indifferent to his need for medical care, he has not pled that the officers' actions resulted from a municipal policy or custom.

Lewis arguably alleges two acts or omissions giving rise to a failure to provide medical care claim: the use of the restraint chair in response to his mental health symptoms and the failure to provide treatment for his shoulder. Lewis provides only one prior incident relevant to each of these policies and offers no other facts supporting existence of a policy.

First, Lewis identifies an incident in which an individual was vomiting in his cell and officers allegedly failed to provide medical care, resulting in his death. Because prior acts must be "fairly similar to what ultimately transpired," this incident is relevant only to the alleged policy that resulted in a failure to provide medical care for Lewis's shoulder. *Davis*, 406 F.3d at 383. The other incident Lewis identifies concern an individual suffering from mental health problems was allegedly placed in an emergency restraint chair. This incident is relevant to his alleged policy of using the emergency restraint chair in lieu of mental health treatment. *See id.*

The Court finds that Lewis has not alleged sufficient facts to permit inference of a policy or custom. *See Vess v. City of Dallas*, No. 3:21-CV-1764-D, 2022 WL 625080, at *6 (N.D. Tex. Mar. 3, 2022) (finding one isolated incident of inaction or indifference toward mentally ill or homeless individual insufficient to allege a policy of not providing medical care to homeless individuals).

18

**C.  Municipal Liability Based on Failure to Train**

The Court also finds Lewis fails to allege that the County failed to train or supervise its officers. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To avoid dismissal of Section 1983 failure-to-train and failure-to-supervise claims, the plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman*, 571 F.3d at 395 (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998)). It is not enough to show that an injury or accident could have been avoided if the employee had better or more training. *City of Canton v. Harris*, 489 U.S. 378, 391 (1989).

There are two ways to prove deliberate indifference. *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (citing *Canton*, 489 U.S. at 386-92). First, in the proof by pattern method, deliberate indifference can be found if municipal employees violate constitutional rights so often that it can be inferred from the pattern of violations that the need for further training must have been plainly obvious to the policymakers. *Id.* This proof by pattern method is "ordinarily necessary to establish municipal culpability and causation." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997).

Second, deliberate indifference may be found through a single incident if a plaintiff can prove that the highly predictable consequence of a failure to train would result in the specific injury suffered. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). This narrow, single-incident exception generally is "reserved for those cases in which the government actor was provided no training whatsoever." *Peña v. City of Rio Grande City*, 879 F.3d 613, 624

(5th Cir. 2018). For example, if a policymaker "opts to provide no training whatsoever to police officers concerning the established and recurring constitutional duty not to use excessive deadly force, a factfinder may reasonably infer that the [municipality] acted with the requisite deliberate indifference." *Littell*, 894 F.3d at 625. To plead *Monell* liability under a single-incident exception, the plaintiff must allege that "the training provided by the municipality was so inadequate that it should have predicted that those deficiencies would have caused the specific harm alleged, not that more or different training would have prevented it." *Hutcheson v. Dallas Cnty.*, No. 3:17-cv-2021-BN, 2020 WL 1692950, at *6 (N.D. Tex. Apr. 7, 2020), *aff'd*, 994 F.3d 477 (5th Cir. 2021).

As discussed below, Lewis alleges that the County failed to train its officers on the treatment of mental health symptoms and crises, use of restraint, use of force, and arrest protocol.[8]

### 1.  Mental Health Treatment

Lewis asserts that the County previously had a Crisis Intervention Team in place to use de-escalation tactics and services for pretrial detainees and that if the County still had this program, his injury would have been "extremely less likely to occur." The Court finds that Lewis has not pled sufficient facts to show deliberate indifference through this claim. While Lewis identifies a specific deficiency in the County's training program, he fails to plead facts establishing deliberate indifference through the proof by pattern method or the single-incident exception.

As for proof by pattern, Lewis alleges the two incidents discussed above. The first incident involved an individual with a mental health issue, but the County's alleged failure to supervise and train related to the provision of "medical help" by officers rather than use of excessive force. *See Dobbins v. City of Dallas*, No. 3:20-cv-1727-K, 2021 WL 4395817, at *7 (N.D. Tex. June

---

[8] The Court does not address Lewis's other failure to train claims because he has not alleged an underlying constitutional violation resulting from the allegedly inadequate training.

24, 2021), *R. & R. adopted*, 2021 WL 3781927 (N.D. Tex. Aug. 25, 2021) (dismissing failure to train claim because plaintiff failed to allege a pattern of similar violations). The second incident is similar to the facts here: an individual with mental health issues was not provided mental health treatment at the jail and instead was strapped into an emergency restraint chair and left unsupervised for several hours. That said, one prior incident, even one that is "indisputably egregious," cannot establish a pattern such that the need for further training would be "plainly obvious" to the policymakers. *Ayon*, 2020 WL 1536383, at *7.

Lewis does not satisfy the narrow single-incident exception because he does not allege that Williamson County Sheriff's Department officers received no supervision or training regarding the constitutional violation at issue. *See Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 386 (5th Cir. 2005) (stating that courts have applied single-incident exception when they find complete failure to train and supervise, not failure in one limited area). Lewis alleges that Williamson County officers were insufficiently trained in de-escalation methods and crisis intervention. Because he alleges a failure to train in one limited area involving the use of force, the single-incident exception is inapplicable. *See Davis*, 406 F.3d at 386; *Littell*, 894 F.3d at 627 (distinguishing situations in which "additional training would have been helpful"); *Sneed v. Austin Indep. Sch. Dist.*, 487 F. Supp. 3d 584, 596-97 (W.D. Tex. 2020) (dismissing failure to train claim because single-incident exception was inapplicable where pleading alleged failure to train on "cultural issues" but did not allege complete failure to train on discrimination and harassment).

Accordingly, the undersigned Magistrate Judge recommends that the District Court dismiss Lewis's failure to train claim premised on the treatment of mental health symptoms.

### 2.   Use of Restraint

Lewis's failure to train claim related to the use of restraint fails for the same reasons. Lewis alleges two prior incidents: one involving the use of the emergency chair (discussed above) and one involving an arrestee who was allegedly restrained for too long after being arrested for driving while intoxicated. Allegations of two prior incidents does not meet the "stringent standard of fault" required to show deliberate indifference. *Mabe v. City of Texas City, Tex.*, No. 3:17-CV-214, 2018 WL 7572441, at *2 (S.D. Tex. June 19, 2018) (dismissing failure to train claim where plaintiff alleged two recent incidents and one incident from 1966) (citing *Brown*, 520 U.S. at 410). Lewis has not alleged that the County provides no training on the use of restraints, and so the single-incident exception does not apply. *See Davis*, 406 F.3d at 386.

Lewis also does not allege any facts related to the training Williamson County officers receive on the use of restraint. To state a claim based on the County's failure to train, Lewis must allege facts as to how the particular training program is defective. *See Ayon*, 2020 WL 1536383, at *6; *Juarez v. Pizana*, No. 3:17-CV-00368-KC, 2018 WL 3769431, at *4 (W.D. Tex. June 25, 2018) (dismissing failure to train claim where plaintiff did not "allege facts relating to the County's policies or procedures on deputy training"). Accordingly, the Court recommends dismissal of Lewis's failure to train claim premised on the use of restraints.

### 3.   Use of Force

Although Lewis alleges other incidents of excessive force, he alleges no facts about how the particular training program is defective. *See Ayon*, 2020 WL 1536383, at *6; *Juarez*, 2018 WL 3769431, at *4. Lewis's claims contain only the conclusory statement that the County "had the chance to take corrective action but it did not." Dkt. 69 ¶ 17. These allegations are insufficient to state a failure to train claim for the use of force.

### 4. Prolonged Arrest

Lewis further alleges that the County had a policy of prolonging arrests and failed to supervise Williamson County officers to prevent constitutional violations while filming LivePD. Even assuming that Lewis has properly alleged an underlying constitutional violation, he again alleges only one other incident plausibly suggesting that an arrest was prolonged to allow LivePD to film the encounter. *See* Dkt 69 ¶ 59. One prior incident is insufficient to allege a pattern for a failure to train or supervise claim, and Lewis does not allege that officers receive no training on Fourth Amendment rights during arrest. *See Davis*, 406 F.3d at 386; *Ayon*, 2020 WL 1536383, at *7.

## D. Americans with Disabilities and Rehabilitation Act

The Americans with Disabilities Act ("ADA") and the Rehabilitation Act require public entities (or private entities receiving federal funding) to provide reasonable accommodations to assist disabled persons in accessing public programs and services. 42 U.S.C. §§ 12101 *et seq.*; 29 U.S.C. §§ 701 *et seq.*; *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 222 (5th Cir. 2011).[9] To state a claim of disability discrimination, a plaintiff must allege that (1) he has a qualifying disability; (2) he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) such discrimination is due to his disability. *Hale v. King,* 642 F.3d 492, 499 (5th Cir. 2011).

Lewis's discrimination claim is predicated on the County's asserted failure to accommodate his anxiety and post-traumatic stress disorder, which allegedly place "substantial limitations" on

---

[9] While claims under both the ADA and the Rehabilitation Act are analyzed similarly, the ADA applies only to public entities and the Rehabilitation Act applies to any federally funded programs or activities, whether public or private. *See Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011); *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010). The Court need not distinguish between the two statutes here.

his "ability to think, concentrate, eat, breath[e] and care for himself."[10] Dkt. 69 ¶ 112. Lewis

alleges that he "disclosed [his] mental health history with staff" and "disclosed that his

symptoms were already inflamed." *Id.* ¶ 114. Lewis further alleges that a request for an

accommodation was unnecessary because the required accommodations were open and obvious.

*Id.* Lewis asserts that the County should have accommodated him by providing mental health

care, "not using force and restraint to meet predictable increases in mental health symptoms," or

using more restraint than needed. *Id.* ¶ 115. The County responds that Lewis "merely states

conclusory assertions that his alleged disability, resulting limitation, and necessary

accommodation were open, obvious, and apparent." Dkt. 71 at 15.

The ADA requires municipalities "to reasonably accommodate limitations, not disabilities."

*Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 164 (5th Cir. 1996). A plaintiff therefore must inform

the entity of "not only a disability, but also any limitation resulting therefrom." *Id.* Without a

request for an accommodation, Lewis must allege that his disability and the necessary

accommodation were so open, obvious, and apparent to the officers that a request was

unnecessary. *Windham v. Harris Cnty.*, 875 F.3d 229, 237 (5th Cir. 2017). Moreover, "mere

knowledge of the disability is not enough; the service provider must also have understood the

limitations the plaintiff experienced as a result of that disability." *Id.* at 236 (cleaned up). The

Fifth Circuit has held that "well-understood and outwardly visible disabilities" like "blindness,

deafness, or being wheelchair-bound" may be open and obvious with respect to the disability,

limitation, and necessary accommodation, *id.* at 238, but the same often is not true for mental

disabilities. *Taylor*, 93 F.3d at 165.

---

[10] Mental illness can be a qualifying disability under the ADA if it limits one or more major life activities. 42 U.S.C. §12102(1)(A); *Dotson v. Bexar Cnty. Hosp. Dist.*, No. SA-19-CV-00083-XR, 2019 WL 6311375, at *8 (W.D. Tex. Nov. 25, 2019); *Dees v. Austin Travis Cnty. Mental Health & Mental Retardation*, 860 F. Supp. 1186, 1189 (W.D. Tex. 1994).

Lewis's Second Amended Complaint contains only conclusory or irrelevant statements about whether his limitations and the necessary accommodations were open and obvious. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). When mental illness is not obvious, "a disabled plaintiff cannot remain silent and expect the defendant to bear the initial burden of identifying the need for, and suggesting, an appropriate accommodation." *Peña Arita v. Cnty. of Starr, Tex.*, No. 7:19-cv-00288, 2020 WL 5505929, at *7 (S.D. Tex. Sept. 11, 2020) (cleaned up) (dismissing ADA claim by detainee who failed to request accommodation for mental illness where his disability and necessary accommodation were not obvious). Lewis states that his "symptoms were predictable," but Lewis must allege that the limitations resulting from his disability and the necessary accommodation were so open, obvious, and apparent to the officers that a request would have been unnecessary. *Ryburn v. Giddings Indep. Sch. Dist.*, No. 1:16-CV-879-RP, 2017 WL 5761609, at *4 (W.D. Tex. Nov. 27, 2017) (dismissing ADA claim because plaintiff failed to allege request for accommodation or that disability and necessary accommodation were open, obvious, and apparent). He does not do so. Accordingly, the Court finds that his claims under the ADA and the Rehabilitation Act should be dismissed.

**E.  Texas Tort Claim Act**

Lewis also alleges that the County violated the Texas Tort Claim Act because Williamson County officers negligently used tangible property—the emergency restraint chair—to restrain Lewis, resulting in physical and mental injuries. The County responds that Lewis's claim is barred by the Act's two-year statute of limitations under Texas Civil Practice and Remedies Code Section 16.003. "A statute of limitations may support dismissal under Rule 12(b)(6) where

it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

Lewis filed suit under Section 1983 and the ADA on January 25, 2021, two years after his claims accrued. Rule 15(c) allows an amended pleading to relate back to the date of an original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Although Lewis did not allege a cause of action under the Texas Tort Claim Act in his original complaint, his claim may arise out of the same conduct, transaction, or occurrence as his original claims. *See Rojas v. Tolteca Enters., Inc.*, No. A-19-CV-00775-JRN, 2020 WL 2300102, at *2 (W.D. Tex. May 7, 2020) (applying Rule 15(c) to reject statute of limitations defense). Because it is unclear from Lewis's pleadings that the claim is barred, the Court declines to recommend dismissal Lewis's Texas Tort Claim Act claim at this stage of the proceedings.

## IV.    Leave to Amend

In his Response, Lewis seeks leave to file a third amended complaint if the Court finds his pleadings deficient. Dkt. 73 at 20. Courts should freely grant leave to amend when justice so requires. FED. R. CIV. P. 15(a)(2). Courts should deny leave to amend when amendment would cause undue delay or undue prejudice to the opposing party, or the amendment would be futile or in bad faith. *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004). Amendment is futile where it "would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000). At a certain point, a plaintiff has pled his "best case." *See Baldwin v. Sullivan*, No. 1:18-CV-36-RP, 2018 WL 5020028, at *7 (W.D. Tex. Oct. 15, 2018).

Lewis has amended his complaint twice and has offered no additional facts he would plead to cure the deficiencies in the Second Amended Complaint. Without proposed amendments, the Court cannot assess whether amendment is warranted. *See Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017) (holding that leave to amend is not required where movant fails to inform court of facts he would plead in amended complaint to cure any deficiencies). Accordingly, Lewis's request for leave to amend should be denied.

## V.    Recommendation

For these reasons, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** Defendant Williamson County, Texas' Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. 71). The Court **RECOMMENDS** that the District Court **DENY** Defendant's Motion as to Plaintiff's Section 1983 excessive force and Texas Tort Claim Act claims, and **GRANT** the Motion and **DISMISS** Plaintiff's remaining claims with prejudice.

## VI.    Order

The Court hereby **GRANTS** Eric A. Hudson's Motion to Withdraw as Counsel (Dkt. 76). The Clerk is instructed to terminate Eric A. Hudson as counsel for Defendant Williamson County. The Court further **ORDERS** that Plaintiff's Motion to Cause Defendant to File Motion to Withdraw as Attorney (Dkt. 64) is **DISMISSED** as **MOOT**.

## VII.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to

file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

    **SIGNED** on December 20, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE