# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| SCOTT PHILLIP LEWIS,<br>*Plaintiff* | §<br>§<br>§ | |
| v. | §<br>§ | Case No. 1:21-cv-00074-ADA-SH |
| WILLIAMSON COUNTY, TEXAS,<br>*Defendant* | §<br>§<br>§ | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE**

Now before the Court are Defendant Williamson County, Texas' Motion for Summary Judgment, filed November 30, 2023 (Dkt. 124), and Plaintiff's Response to Defendant's Motion for Summary Judgment, filed January 16, 2024 (Dkt. 139).[1] The District Court referred all nondispositive and dispositive motions to this Magistrate Judge for resolution or Report and Recommendation, respectively, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 16.

### I.  Background

On the evening of January 25, 2019, Scott Phillip Lewis was arrested for suspicion of drunk driving and transported to Williamson County Jail. Second Amended Complaint, Dkt. 69 ¶ 6. On January 25, 2021, Lewis filed this civil rights suit against Williamson County ("County") under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act ("ADA"). Dkt. 1. Lewis asserted the following claims: (1) excessive force, in violation of the Fourth and Fourteenth

---

[1] Two other motions filed by Lewis are pending before the District Court. Dkts. 137, 138.

Amendments to the United States Constitution; (2) cruel and unusual punishment, in violation of the Eighth Amendment; (3) failure to provide medical care, in violation of the Fourteenth Amendment; (4) failure to provide reasonable accommodations for his mental disabilities, in violation of Title II of the ADA and Section 504 of the Rehabilitation Act; (5) denial of procedural due process under the Fourteenth Amendment; (6) denial of right to speedy trial, in violation of Sixth Amendment; (7) a high-speed chase, in violation of the Fourteenth Amendment; (8) failure to train and supervise; and (9) negligence under the Texas Tort Claims Act. Dkt. 69.

On March 2, 2021, the County filed its first motion to dismiss under Federal Rule of 12(b)(6). Dkt. 7. This Magistrate Judge recommended that the District Cout grant the motion in part. Dkt. 22. The District Court permitted Lewis to file his first amended complaint and dismissed the motion to dismiss as moot. Dkt. 34. The County filed a second motion to dismiss on February 9, 2022. Dkt. 37. This Court again recommended that the motion to dismiss be partially granted. Dkt. 44. The District Court granted Lewis leave to file a second amended complaint and dismissed the County's second motion to dismiss without prejudice. Dkt. 68.

Defendant filed its third motion to dismiss on September 23, 2022. Dkt. 71. On December 20, 2022, this Court recommended that the District Court (1) deny the motion as to Lewis' excessive force claim related to his "full nelson" and restraint allegations while he was detained at Williamson County Jail and his negligence claim under the Texas Tort Claim Act, and (2) grant the motion as to all other claims. Dkt. 78. On March 21, 2023, the District Court adopted the Report and Recommendation in full and dismissed all of Lewis' claims except for his excessive force restraint and negligence claims. Dkt. 85.

The County now moves for summary judgment on Lewis' surviving claims under Rule 56(c). Lewis opposes the Motion and asks the Court for additional discovery.

## II.   Summary Judgment Standard

Summary judgment will be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute over a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508.

Once the moving party has made an initial showing that no evidence supports the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence and thus cannot defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.* The party opposing summary judgment must identify specific evidence in the record and articulate the precise manner in which that evidence supports its claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III. Analysis

The County argues that there is no genuine issue of material fact as to either Lewis' excessive force claim or his or negligence claim. The County contends that the summary judgment evidence supports none of Lewis' allegations. Lewis responds that judgment should be denied because "Defendant's Motion for Summary Judgment offers more ambiguity and obscurity than evidence." Dkt. 139 at 1. But he fails to address the County's arguments for judgment or to come forward with sufficient summary judgment evidence of his own to support his claims.[2]

As stated, mere conclusory allegations are not competent summary judgment evidence and cannot defeat a motion for summary judgment. *Turner*, 476 F.3d at 343. In addition, Lewis must identify specific evidence in the record and articulate the precise manner in which that evidence supports its claim to survive summary judgment. *Adams*, 465 F.3d at 164.

Before considering the record and the County's arguments for summary judgment, the Court addresses Lewis' latest argument that "[a]dditional discovery is needed to address genuine issues of material fact." *Id.* at 2.

**A. Request for Additional Discovery**

Lewis filed this suit three years ago, and the extended discovery deadline under the Amended Scheduling Order expired September 1, 2023. Dkt. 104 at 3. In his response, Lewis once again asks the Court to reopen discovery so that he can "properly respond" to the County's arguments. Dkt. 139 at 2. Lewis also falsely alleges that "a Rule 26(f) conference has not yet taken place as required by Rule 26 of the Federal Rules of Civil Procedure." *Id.*

---

[2] Lewis relies on only two pages of summary judgment evidence. Dkt. 139 at 7-8. This evidence includes a "Return Office Visit" medical record dated February 27, 2019, which was signed by Nathan Breazeale, M.D. The record states that an MRI of Lewis' left shoulder revealed a "proximal humerus fracture" but does not state how his shoulder was injured. *Id.* at 7. The second page is a handwritten "Progress Note" dated February 6, 2019, which is unsigned, contains illegible handwriting, and does not state who wrote it. *Id.* at 8.

4

Lewis, who now proceeds *pro se*, has had multiple opportunities to raise any discovery issues with this Magistrate Judge and the District Court. One of his original attorneys engaged in a Rule 26(f) conference with counsel for the County before the parties submitted an agreed proposed scheduling order on September 3, 2021. Dkt. 18; Dkt. 20; Dkt. 112 at 3. After Lewis' counsel withdrew, the District Court conducted an initial pretrial conference with Lewis and counsel for the County on January 5, 2023. Dkt. 82. And on July 19, 2023, this Magistrate Judge held a hearing on the County's first motion to compel at which Lewis was present. The Court granted the County's motion to compel and also ordered the County to produce documents responsive to seven requests for production Lewis made orally during the hearing. Dkt. 104 at 2-3. In the Order denying Lewis' request to stay discovery, the District Court found that "the parties have conferred sufficiently. Plaintiff has had multiple opportunities to raise any discovery issues with the District Court and th[e] Magistrate Judge and has failed to do so until discovery is closed. In summary, Plaintiff has had sufficient time to engage in discovery, and has not done so." Dkt. 116 at 3.

Lewis had ample time to conduct discovery. His request to reopen discovery is **DENIED**.

**B. Excessive Force Claim**

Lewis contends that Williamson County Jail Officer Carlos Paniagua used excessive force against him, in violation of his Fourteenth Amendment rights. Lewis alleges that after he was taken to Williamson County Jail and learned that "his arrest was broadcast on the television show 'LivePD' without his consent," he "immediately experienced an intense increase in mental health symptoms leading to a panic attack or manic episode." Dkt. 69 ¶ 14. Lewis alleges that during this "debilitating increase in mental health symptoms," he "banged on the windows" of his holding cell. *Id.* He alleges that a group of officers then gathered outside his holding cell and Officer Paniagua "entered the cell using excessive force by using a takedown tactic." *Id.* ¶ 15. Lewis

alleges that Officer Paniagua used a restraint he calls a "full nelson," which he describes as: "where the officer's knee . . . was in Plaintiff's back forcing Plaintiff's left rib into a concrete step while Plaintiff's arms being simultaneously pulled backwards with pressure applied to the neck area." *Id.* Plaintiff alleges that his shoulder was injured during "the takedown." *Id.* ¶ 16.

After restraining Lewis, Officer Paniagua "strapped" him into an emergency restraint chair. *Id.* Lewis alleges that after he complained his shoulder was in pain, "the straps were tightened over his injured shoulder that occurred from the take down." *Id.* Lewis does not state how long he was strapped to the chair, but alleges that "the use of the emergency restraint chair is known to be dangerous and can cause serious and permanent injury." *Id.* ¶ 18.

The County argues that Officer Paniagua restrained Lewis by briefly placing him on the floor and then temporarily placing him in an emergency restraint chair. The County argues that none of the evidence suggests that Lewis was injured during his temporary restraint by Officer Paniagua. The County also argues that the evidence shows that Officer Paniagua's restraint of Lewis was objectively reasonable under the circumstances. The Court agrees.

### 1. The Fourteenth Amendment Applies

The United States Supreme Court has rejected the notion "that all excessive force claims brought under § 1983 are governed by a single generic standard." *Graham v. Connor*, 490 U.S. 386, 393 (1989). Thus, in addressing an excessive force claim brought under § 1983, "analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Id.* at 394. Depending on the status of the individual alleging excessive force, the constitutional right will involve the Fourth Amendment's prohibition against unreasonable seizures of the person, the Fourteenth Amendment's Due Process Clause, or the Eighth Amendment's ban on cruel and unusual punishment. *Id.* at 394, 395 n.10. "The validity of the

claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard." *Id.* at 394.

Because Lewis was a pretrial detainee at the time of the alleged use of excessive force at issue, the Fourteenth Amendment's Due Process Clause applies here. Pretrial detainees have a constitutional right to be free from "the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Use of force on a pretrial detainee is "excessive" and violates the Fourteenth Amendment if it is "*objectively* unreasonable." *Id.* at 392.[3]

To determine whether an officer's use of force was objectively reasonable, courts look to the "facts and circumstances of each particular case." *Id.* at 397. The Supreme Court has emphasized that:

> A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. A court must also account for the legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security.

*Id.* (cleaned up). The *Kinglsey* Court also noted that the factors below "may bear" on the reasonableness or unreasonableness of the force used:

---

[3] In *Kingsley*, the Supreme Court resolved a circuit split and clarified that the relevant standard in Fourteenth Amendment excessive force cases "is objective not subjective" and "the defendant's state of mind is not a matter that a plaintiff is required to prove." 576 U.S. at 395. Thus, unlike in Eighth Amendment excessive force cases, a plaintiff need not prove that the use of force was applied "maliciously and sadistically to cause harm." *Id.* at 400. The Court explained that the standard applied to claims under the Fourteenth Amendment requires an objective standard because "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" *Id.* Although *Kingsley* was decided almost a decade ago, the County argues in its Motion that a pretrial detainee's excessive force claim "is subject to the same analysis as a convicted prisoner's claim for use of excessive force under the Eighth Amendment." Dkt. 124 at 5 (quoting *Kitchen v. Dallas County, Tex.*, 759 F.3d 468, 477 (5th Cir. 2014), *abrogated by Kingsley*, 576 U.S. at 400-01). After *Kingsley*, *Kitchen* is no longer good law. The County's reliance on *Hudson v. McMillian*, 503 U.S. 1 (1992)—an Eighth Amendment case—is similarly unavailing. *See Kingsley*, 576 U.S. at 400 (explaining that respondent's reliance on Eighth Amendment cases such as *Hudson* was misplaced).

7

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* ("*Kingsley* factors").

Besides showing that the force used was objectively unreasonable, the plaintiff also must show that force caused him to suffer "more than a de minimis injury." *See Westfall v. Luna*, 903 F.3d 534, 547, 549-50 (5th Cir. 2018) (Fourth Amendment claim);[4] *Jones v. Wright*, No. A-22-CV-1303-RP, 2023 WL 4940517, at *4 (W.D. Tex. Aug. 2, 2023) (Fourteenth Amendment).

### 2. The *Kingsley* factors do not show an objectively unreasonable use of force

The County argues that after Lewis experienced his "panic attack or manic episode" and began to bang on the windows of his holding cell and place his hands on Officer Paniagua, Officer Paniagua engaged in "de-escalation measures to ensure Lewis was not a danger to himself or to correctional staff at the Williamson County Jail." Dkt. 124 at 6. The County argues that Officer Paniagua restrained Lewis by briefly placing him on the floor and then temporarily placing him in an emergency restraint chair. The County argues that none of the evidence suggests Lewis was injured during his temporary restraint by Officer Paniagua. The County also argues that the evidence shows that Officer Paniagua's restraint of Lewis was objectively reasonable under the circumstances.

The summary judgment evidence supports the County's arguments. The internal investigation report and incident reports of the officers involved show that Lewis was openly intoxicated,

---

[4] The standard for excessive force is the same under both the Fourteenth and the Fourth Amendments: "whether the force was objectively unreasonable in light of the facts and circumstances of each particular case." *Boyd v. McNamara*, 74 F.4th 662, 667 n.3 (5th Cir. 2023), *cert. denied sub nom. Johnson v. Boyd*, No. 23-447, 2024 WL 71987 (U.S. Jan. 8, 2024). So courts may rely on Fourth Amendment excessive force cases when analyzing Fourteenth Amendment excessive force claims. *Id.*

disruptive, argumentative, and generally "non-compliant" with jail staff during the booking process. Lt. David Lowthorp's Internal Investigation Recommendation Report, Dkt. 124-2 at 5. The evidence shows that after Lewis arrived at the jail's general booking area, he "was unable to follow directions for the Booking process or sit down in the Booking area" as directed. Officer Paniagua's Incident Report, Dkt. 124-1 at 4. After he "demanded to be released and was inciting others in booking," Lewis was placed in a private holding cell "to calm down." Dkt. 124-2 at 5.

After Lewis was placed in the holding cell, he contends that he experienced a "panic attack or manic episode" and admits that he proceeded to "bang" on the windows. Dkt. 69 ¶ 14. The evidence shows that Officer Paniagua then "went into the cell to speak with Mr. Lewis and Sgt. Paniagua directed Mr. Lewis to remain seated while he was speaking with him" and "not to strike the window or I would have to place him in the Emergency Restraint Chair." Dkt. 124-1 at 4; Dkt. 124-2 at 5. Lewis "began to be argumentative and attempted to stand again and place[d] his hand on [Officer Paniagua's] arm." Dkt. 124-1 at 4. Officer Paniagua then put Lewis "on the ground and placed [him] in the Emergency Restraint Chair." *Id.* Officer Bret Elliott, who observed the incident, states in his report that Lewis was "placed in the [Emergency Restraint Chair] without any problem." Dkt. 124-1 at 5. The evidence shows that Lewis was then evaluated by medical staff and "made no medical complaints during [his] jailing." Dkt. 124-2 at 5. Lewis' blood alcohol level was reported to be 0.219, nearly triple the Texas limit of 0.08. *Id.*

The Internal Investigation Recommendation Report aligns with Officer Paniagua's and Officer Elliott's accounts of the incident. It notes that investigators "reviewed jail camera footage and did not observe any policy violations" and concluded that "the incident was handled according to jail standards." *Id.*

While Lewis alleges that his left shoulder was injured when Officer Paniagua restrained him, the County points to medical records showing that Lewis reported to his treating physician that he actually injured his left shoulder when "he was tackled while playing lacrosse, and his arm was twisted behind his back." Dkt. 124-3 at 2. Lewis denies that his shoulder was injured during a lacrosse game and continues to allege that his shoulder was injured when he was restrained by Officer Paniagua. He relies on the unsigned Progress Note dated February 6, 2019, which states that Lewis alleged that an officer had "grabbed and forced arms behind back" and "felt tearing." Dkt. 139 at 8.

While the Progress Note goes to whether Lewis suffered an injury while he was restrained, it does not create a material fact issue as to whether Officer Paniagua's use of force was objectively unreasonable under the facts and circumstances of the incident. "Officials are justified in using some degree of force in a good-faith effort to maintain or restore discipline where a prisoner refuses to cooperate with legitimate directives of an official." *Velazquez v. Baker*, No. 5:20-CV-078-BQ, 2021 WL 812505, at *5 (N.D. Tex. Jan. 28, 2021), *R. & R. adopted*, 2021 WL 808738 (N.D. Tex. Mar. 3, 2021) (internal citation and quotations omitted). Lewis fails to come forward with ***any*** summary judgment evidence to refute the County's evidence that Officer Paniagua's use of force was objectively reasonable. Lewis does not refute the County's evidence that he was disobedient and argumentative and flouted commands during the booking process. He also does not refute that just before he was restrained, he banged on his holding cell's windows and placed his hand on Officer Paniagua after ignoring his directions to sit down. Lewis does not allege or come forward with any evidence that he was placed on the ground or in the emergency restraint chair for an unreasonable amount of time.

Considering all of the *Kinglsey* factors, the Court finds that Officer Paniagua's use of force was objectively reasonable under the circumstances.[5] Lewis has failed to provide the Court with "objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley*, 576 U.S. at 398. The County is entitled to summary judgment on Lewis' excessive force claim.

## C. Lewis' Alternative Negligence Claim

In the alternative, Lewis argues that the County is liable under the Texas Tort Claims Act ("TTCA") for negligently placing him in the emergency restraint chair "resulting in persistent physical and mental injuries." Dkt. 69 ¶ 169.

To prevail on his negligence claim, Lewis must show that the County (1) had a legal duty and (2) breached that duty, and that (3) he suffered damages proximately caused by the breach. *Elephant Ins. Co. v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022). Because governmental units are immune from suit under the TTCA, Lewis also must show that the County's immunity has been waived. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003) ("A unit of state government is immune from suit and liability unless the state consents. . . . In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity.").

---

[5] *See, e.g.*, *Davis v. Hernandez*, No. A-17-CV-744-RP, 2019 WL 691206, at *4 (W.D. Tex. Feb. 19, 2019) (finding that applying hand restraints and leaving plaintiff in emergency restraint chair for several hours was not excessive where plaintiff had refused to obey commands and made threats against officers); *Lindley v. Montgomery Cnty., Tex.*, No. 4:19-CV-02733, 2021 WL 3860752, at *4 (S.D. Tex. Aug. 27, 2021) (finding that use of restraint chair after pretrial detainee exhibited erratic behavior was not excessive); *Gonzales v. Rowe*, No. 5:20-CV-052-BQ, 2020 WL 4811005, at *3 (N.D. Tex. July 27, 2020) (finding that "some degree of force" by officers was justified where inmate "refus[ed] to comply with the Officers' repeated orders to lie on the cell's floor" because "[d]isobeying orders poses a threat to the order and security of an institution").

Lewis argues that the County's immunity from his negligence claim has been waived under Section 101.021(2) of the TTCA because "tangible personal property, the emergency restraint chair" was used to allegedly injure him. Dkt. 69 ¶ 169. But the TTCA does not waive immunity for claims arising out of intentional torts. TTCA § 101.057(2). A plaintiff cannot avoid a governmental unit's sovereign immunity by pleading an intentional tort claim as a negligence claim. *See Aguirre v. City of San Antonio*, 995 F.3d 395, 422 (5th Cir. 2021) ("[I]ntentional conduct, no matter how it is pled, falls under the TTCA's sovereign immunity waiver exception."); *Quinn v. Guerrero*, 863 F.3d 353, 363 (5th Cir. 2017) ("If plaintiffs classify intentional-tort claims as negligence claims, governmental immunity still applies.").

Lewis alleges that after he complained to Officer Paniagua that his "shoulder was in pain," Officer Paniagua intentionally "tightened" the straps "over his injured shoulder." Dkt. 69 ¶ 16. Accordingly, Lewis' negligence claim is based on intentional conduct, which "is a quintessential intentional tort claim." *Aguirre*, 995 F.3d at 422; *see also City of Watauga v. Gordon*, 434 S.W.3d 586, 592 (Tex. 2014) ("[A] specific intent to inflict injury is without question an intentional tort.").

The gravamen of Lewis' negligence claim against the County, moreover, is that Officer Paniagua used excessive force against him when he restrained him on the ground and placed him in the chair. "Claims of excessive force . . . arise out of a battery rather than negligence, whether the excessive force was intended or not." *Gordon*, 434 S.W.3d at 593; *see also Aguirre*, 995 F.3d at 422 ("Texas courts have repeatedly rejected the argument that intentional conduct by police that also forms the basis of excessive force claims . . . can give rise to cognizable claims under the TCCA."). Because Lewis' negligence claim is based on the same conduct as his excessive force allegations, it falls outside the TTCA's limited waiver of sovereign immunity.

For these reasons, the County is entitled to summary judgment on Lewis' negligence claim.

### IV. Recommendation

This Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendant Williamson County, Texas' Motion for Summary Judgment (Dkt. 124) and issue judgment for Defendant.

### V. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on January 24, 2024.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE